MOSES T. TALLMAN, Respondent, v. THE SYRACUSE, BING-
HAMTON AND NEW YORK RAILROAD COMPANY, Appellant.

CONSTRUCTION OF STATUTES. RAILROAD COMPANIES; DUTY OF, CONCERNING FENCES
ALONG THE LINE OF THEIR ROADS.

Section forty-four of the general railroad act (Ch. 140, Laws of 1850), requir-
ing railroad companies "to erect and maintain fences on the sides of their
road, of the height and strength of a division fence, as required by law,"
is not a nullity, because there is no statute defining the height and
strength of division fences; but is to be construed in the light of the
evident purpose and intention of the legislature, by this provision, to
afford protection to life and property, and must be understood to require
these companies to inclose their track with substantial fences, sufficient
at least to turn cattle and horses that are orderly and quiet.

Where, in an action for damages for injury to cattle from a passing train,
proof is given, that, for some distance along the track, there was no fence
at all, the question of the sufficiency of the fence does not arise, and the
railroad company cannot defend their entire omission of duty, upon the
ground that they are not informed as to the precise height and strength
of the fence they should make.

Whenever the sufficiency of the fence to meet the requirements of the stat-
ute is brought in question, it may have to be determined by consulting
the action of the town, under the Revised Statutes, upon the subject of
division fences; but this cannot be necessary where *no fence* has been
built.

"A statute made *pro bono publico* is to be construed in such a manner, that
it may, as far as possible, attain the end proposed," and "all statutes
made for the convenience of the public ought to have a liberal construc-
tion."

THIS action was brought by the plaintiff to recover damages
of the defendant for killing one of the plaintiff's cows and
injuring others, by running over them with one of their
engines while upon the track of their road. The plaintiff
proved that he owned a farm in the town of Preble, Cortland
county, N. Y., and occupied the same during the year 1860,
and that the defendants' railroad passes through and over the
said farm a distance of one to three-fourths of a mile north
and south. That on the 5th day of July, 1860, while his
cows were upon and along the railroad, where the said rail-
road crosses the plaintiff's farm, the defendants' engine and

cars, by and with which the defendants were then operating their said railroad, ran against them, killing one and badly injuring three others; that the damage to the cows was from $90 to $100. The plaintiff also proved, that at the time of the injury there was no fence on the east side of the said railroad for a distance of forty rods, between the plaintiff's farm and the railroad; that in many other places along the sides of the defendants' railroad, where the same crosses the plaintiff's farm, the fence was defective, so that cattle could. easily pass through and go upon the said railroad. The plaintiff also gave evidence tending to show, that the cows must have come upon the railroad where there was no fence at all along the sides of the railroad, or through the defective fence adjoining the same. The defendants moved to nonsuit the plaintiff, on the ground that he had not proved a cause of action against the defendants; that the plaintiff is not entitled to recover as the proof now stands; that there is no statute or law in this State regulating or fixing the height and strength of division fences, and, therefore, the plaintiff is not entitled to recover damages for the injuries done to his cattle while straying upon the defendants' railroad, there being no proof of negligence other than that there was no fence on the side of their road; that the defendants were not bound to erect and maintain the whole of the fence on the sides of their road through plaintiff's farm; that there is no proof that the injury complained of was occasioned or caused by the carelessness of defendants; and that proof, that they did not erect and maintain fences on the sides of their railroad through the plaintiff's farm, is not sufficient to entitle the plaintiff to recover for the injury done to his cattle while upon the defendants' railroad. The court refused to nonsuit the plaintiff, to which refusal the defendants excepted. The defendants then gave evidence tending to prove that the cows came upon the railroad through the open gate at the plaintiff's farm crossing, and that they so came upon the track, and the one cow was killed and the others injured, without any fault or negligence on the part of the defendants, and rested their case.

The plaintiff then gave evidence tending to prove that the

gate at the farm crossing was closed, before and at the time of the injury, and that, therefore, the cows could not have come upon the track at that place.

The court charged the jury, "that, if they should find that the cows were injured in consequence of the gate at the plaintiff's farm crossing being left open, whereby they came upon the track, it not appearing by whom it was left open, it could not be attributed to the negligence of the defendants, and their verdict should be for the defendants."

The court further charged the jury, that if they should find that the plaintiff's cows came upon the railroad, and were injured in consequence of the defendants' neglect to erect and maintain fences on the sides of their road, of the height and strength of a division fence required by law, the plaintiff would be entitled to their verdict for the amount of injuries sustained; to which charge the defendants excepted. The jury found a verdict for the plaintiff for $99.50, damages, and, a judgment being entered for the plaintiff, the defendants appealed to the General Term, where the same was affirmed, and the defendants appealed to this court.

*O. Porter*, for the appellant.

*M. M. Waters*, for the respondent.

MASON, J. There was no contest upon the trial, over the height and strength of the fence. There was forty rods beside the plaintiff's fields where no fence at all had been erected, and in many other places along the sides of the defendants' road, where it crosses the plaintiff's farm, the fence was defective, so that cattle could easily pass through and go upon the railroad.

The argument of the appellants' counsel, if I correctly appreciate it, is, that, as there is no statute fixing and defining the height and strength of a division fence, the defendants are absolved from the duty imposed upon them by the general railroad act to erect and maintain fences at all; or, in other words, that the general railroad act does not impose any duty upon the

railroad in regard to fencing, because the law does not define the height and strength of a division fence. The whole scheme of our statutes, in regard to division fences, assumes that there is a standard fixed, and it is well known that there is such a standard fixed by the towns generally.

The Revised Statutes provide that the electors, in town meeting assembled, may make rules and regulations in regard to this matter, in each town. (1 R. S. 341, § 5; sub. § 11, 4th ed. p. 647.)

The plaintiff, I presume, did not go into proof on this subject, because here was forty rods where there was no fence constructed, and in other places the fence was so radically defective as to afford no obstacle to cattle passing over it. There was no proof made in the case as to any action of the town of Preble, prescribing any regulation in regard to division fences, and yet farms highly cultivated, with division fences, exist all through the town, and the jury who tried this case, I doubt not, were all familiar with the regulations in regard to division fences, as they were farmers, and had to support and maintain them. Be this as it may, the general railroad act makes it the duty of all railroads to erect and maintain fences at the sides of their railroad, and declares that the consequences of their omission to do so shall subject them to a liability for all damages which shall be done by their agents or engines, to cattle, horses, etc., upon their road (2 R. S. 689, 690, §§ 55, 56), and this fifty-sixth section declares that " so long as such fences shall not be made, and when not in good repair, such railroad corporation and its agents shall be liable for such damages," and it will not do for these railroads to entirely omit this duty upon the plea that they are not informed as to the precise height and strength they must make the fences. The object of this statute requirement is to prevent these domestic animals from escaping from the adjoining fields upon the railroad track, and in considering this statute, Judge DENIO said, in the case of *Corwin* v. *Erie Railroad Co.* (3 Kern. 54), that the design of the statute was " to require the railroad companies to inclose their track with substantial fences." This is,.

beyond doubt, required of them,—such a fence at least as will turn cattle and horses that are orderly and quiet.

This, at least, they must do, and the statute requires the fence to be of the height or strength of a division fence required by law, and whenever a case comes where the sufficiency of the fence is placed in doubt in the litigation, then it may become necessary to consult the town ordinance, and see whether the fence meets the requirements. This cannot be necessary where no fence has been built, or where it is so entirely out of repair and proper condition as was this fence. The question whether this fence was sufficient or not, was not raised upon the trial, and there was no error in the charge submitting the case to the jury. The defendants were clearly liable upon the proof, and the judgment should be affirmed.

CLERKE, J. This is an action brought to recover damages for injuries done to plaintiff's cattle on the road of the defendants, by their engine. On the 3d of July, 1860, while the plaintiff's cows were upon the railroad, where it crosses the plaintiff's farm, the engine ran against them, killing one and wounding three others. It was proved, that at the time of the occurrence there was no fence on the east side of the railroad for a distance of forty rods, between the plaintiff's farm and the railroad, and that in many other places along the sides of the defendant's road, where it crosses the plaintiff's farm, the fence was so defective that cattle could easily pass through and go upon the road. The plaintiff also gave evidence tending to prove that the cows must have come upon the road where there was no fence at all along the sides of it, or through the defective fence adjoining the road. The plaintiff gave no material evidence of negligence on the part of the defendant, other than the omission to erect and maintain fences along the sides of the road across plaintiff's farm.

The defendant's counsel asked the court to dismiss the complaint, on the ground that he had not proved a cause of action against the defendant, alleging that there is no statute

of this State regulating or fixing the height and strength of division fences.

The court refused to dismiss the complaint, and the defendant's counsel duly excepted.

The defendants then gave evidence tending to prove that the cows came upon the railroad through the open west gate at the plaintiff's farm-crossing, and that the injuries occurred without any fault or negligence of the defendant. The plaintiff gave evidence tending to prove that the west gate was closed before and at the time of the injury.

The court charged the jury, if they should find that the cows were injured in consequence of the gate being left open, their verdict should be for defendant, but if they should find that the cows were injured in consequence of the defendants' neglect to erect and maintain fences on the sides of their road, of the height and strength required by law, the plaintiff would be entitled to their verdict for the amount of the injuries sustained; to which the defendants' counsel excepted. The only question, then, in this case, is whether the defendants were required by law to erect fences along the sides of the road between the plaintiff's farm and the railroad. The general railroad act of 1850 (Laws of 1850, p. 233, § 44), requires "that every corporation formed under this act, shall erect and maintain fences on the sides of their road, of the height and strength of a division fence *required by law*, with openings or gates or bars therein, and farm crossings of the road for the use of the proprietors of lands adjoining such railroad; and also construct and maintain cattle guards at all road crossings, suitable and sufficient to prevent cattle and animals from getting on the railroad. Until such fences and cattle guards shall be duly made, the corporation and its agents shall be liable for all damages which shall be done by their agents or engines, to cattle, horses, or other animals thereon; and after such fences and guards shall be duly made and maintained, the corporation shall not be liable for any such damages, unless negligently or wilfully done."

The defendant's counsel insists, that no obligation rested on the defendants to erect the fences, because the statute

directs that they should be of the height and strength of a division fence, "*as required by law*," and as there was no law fixing the height and strength of a division fence, the statute itself was a nullity, and could not be enforced. It does not appear that there is any other law fixing the height and strength of a division fence, and unless we can find in this act sufficient to warrant us, according to the rules governing the construction of statutes, the proposition of the counsel must probably prevail. In *Corwin* v. *The N. Y. & Erie R. R. Co.* (3 Kern. 421), which was an action brought to recover damages for precisely the same injuries and omission as are alleged in this case, it was held, that a railroad corporation which omits to comply with the statute as to erecting and maintaining fences and cattle guards, is liable to the owner of cattle which stray upon the track from an adjoining close, or the highway crossing it, and that the mere negligence of the owner in permitting his cattle to stray upon the land of another adjoining the railroad, or to run at large upon the highway crossing it, is not a defense to the corporation.

But the question relative to the alleged defect in the statute did not arise, or rather was not noticed, in that case. Indeed, it does not appear to have occurred to any one engaged in the trial or argument.

It cannot be denied, that it was the intention of the legislature to require from railroad corporations some protection for the public benefit, and that this protection consisted in erecting fences suitable for the purpose in view. The object of this provision of the statute is not merely to protect the cattle and other animals of adjoining or neighboring proprietors, but to protect the lives and limbs of passengers, and all persons connected with the train. A locomotive, moving at the usual rate of velocity, attached to a long train of cars, coming in contact with an animal on the track, is in imminent danger of being thrown from it, together with some or all the cars composing the train; and thus the destruction of many lives, and injuries to the persons of many of the passengers would, probably, if not inevitably, follow. This

provision of statute, then, is unquestionably for the public good. The well known rule, consequently, applies: " A statute made *pro bono publico* shall be construed in such a manner that it may, as far as possible, attain the end proposed." *Pierce* v. *Hopper*, Str. 253, 258 (referred to in Bacon's Abridgment, Statute, I, sub. 7.) The New River Water act, was held to extend to places adjacent, although only the city of London was mentioned in it; " because all statutes made for the convenience of the public ought to have a liberal construction." (*New River Co.* v. *Graves*, 2 Vern. 431, referred to in Bacon's Abridgment, Statute, I, sub. 7.) It has always enjoined as a duty upon judges to put such a construction upon a statute as may redress the mischief, guard against all subtle invention and evasions for the continuance of the mischief, and give life and strength to the remedy *pro bono publico*, according to the true intent of the makers of the law.

What was the evident intent of the legislature in enacting this provision of the railroad act of 1850 ? The intent clearly was, that railroad companies should erect fences of sufficient height and strength to prevent cattle and other animals from getting on the railroad. And if one portion of this section was transposed, or even if the punctuation was changed a little, the last part of the sentence may be applied to the erection and maintenance of fences, as well as to the construction and maintenance of cattle guards at all railroad crossings; so that the provision might be held to direct, that the fences should be of such height and strength as may be sufficient to prevent cattle and other animals from getting on the railroad. I think the construction given by the Supreme Court correct.

The judgment should be affirmed with costs.

Judgment affirmed.