HAYES, by his next Friend, *v.* MICHIGAN CENTRAL RAILROAD COMPANY.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

Argued March 19th, 1884.—Decided April 7th, 1884.

*Railroad—Municipal Corporations.*

A statute authorizing a municipal corporation to require railroad companies to provide protection against injury to persons and property confers plenary power in those respects over the railroads within the corporate limits.

When the line of a railroad runs parallel with and adjacent to a public park which is used as a place of recreation and amusement by the inhabitants of a municipal corporation, and the corporation requests the company to erect a fence between the railroad and the park, it is within the design of a statute conferring power upon the municipal corporation to require railroad companies to protect against injuries to persons.

A grant of a right of way over a tract of land to a railroad company by a municipal corporation by an ordinance which provides that the company shall erect suitable fences on the line of the road and maintain gates at street crossings is not a mere contract, but is an exercise of the right of municipal legislation, and has the force of law within the corporate limits.

If a railroad company, which has been duly required by a municipal corporation to erect a fence upon the line of its road within the corporate limits, for the purpose of protecting against injury to persons, fails to do so, and an individual is injured by the engine or cars of the company in consequence, he may maintain an action against the company and recover, if he establishes that the accident was reasonably connected with the want of precaution as a cause, and that he was not guilty of contributory negligence.

This action was brought by the plaintiff in error to recover damages for personal injuries alleged to have been caused by the negligence of the defendant in error. After the evidence in · the cause had been closed, the court directed the jury to return a verdict for the defendant. A bill of exceptions to that ruling embodied all the circumstances material to the case, and presented the question, upon this writ of error, whether there was sufficient evidence to entitle the plaintiff below to have the issues submitted to the determination of the jury.

The defendant in running its trains into Chicago, used the tracks of the Illinois Central Railroad Company, under an arrangement between them; and no question was made but that the defendant is to be treated, for the purposes of this case, as the owner as well as occupier of the tracks.

The tracks in question were situated for a considerable distance in Chicago, including the place where the injury complained of was received, on the lake shore. They were built in fact, at first, in the water on piles; a breakwater, constructed in the lake, protecting them from winds and waves, and on the west or land side, the space being filled in with earth, a width of about 280 feet, to Michigan avenue, running parallel with the railroad. This space between Michigan avenue and the railroad tracks was public ground, called Lake Park, on the south end of which was Park Row, a street perpendicular to Michigan avenue and leading to and across the railroad tracks to the water's edge. Numerous streets, from Twelfth street north to Randolph street, intersected Michigan avenue at right angles, about 400 feet apart, and opened upon the park, but did not cross it. Nothing divided Michigan avenue from the park, and the two together formed one open space to the railroad.

The right of way for these tracks was granted to the company by the city of Chicago over public grounds by an ordinance of the common council, dated June 14th, 1852, the 6th section of which was as follows:

" SEC. 6. The said company shall erect and maintain on the western or inner line of the ground pointed out for its main track on the lake shore, as the same is hereinbefore defined, such suitable walls,

fences, or other sufficient works as will prevent animals from straying upon or obstructing its tracks and secure persons. and property from danger, said structure to be of suitable materials and sightly appearance, and of such height as the common council may direct, and no change therein shall be maue except by mutual consent; provided, however, that the company shall construct such suitable gates at proper places, at the ends of the streets which are now or may hereafter be laid out, as may be required by the common council, to afford safe access to the lake; and provided, also, that in case of the construction of an outside harbor, streets may be laid out to approach the same, in the manner provided by law, in which case the common council may regulate the speed of locomotives and trains across them."

It was also provided in the ordinance, that it should be accepted by the railroad company within ninety days from its passage, and that thereupon a contract under seal should be formally executed on both parts, embodying the provisions of the ordinance and stipulating that the permission, rights, and privileges thereby conferred upon the company should depend upon their performance of its requirements. This contract was duly executed and delivered March 28th, 1853.

The work of filling in the open space between the railroad tracks and the natural shore line was done gradually, more rapidly after the great fire of October 9th, 1871, when the space was used for the deposit of the debris and ruins of buildings, and the work was completed substantially in the winter of 1877–8.

In the mean time several railroad tracks had been constructed by the railroad company on its right of way, used by itself and four other companies for five years prior to the time of the injury complained of, and trains and locomotives were passing very frequently, almost constantly.

The railroad company had also partially filled with stones and earth the space east of its tracks, to the breakwater, sufficiently so in some places to enable people to get out to it. This they were accustomed to do, for the purpose of fishing and other amusements, crossing the tracks for that purpose. At one point there was a roadway across the park and the

tracks, used by wagons for hauling materials for filling up the space, and a flagman was stationed there.    At this point great numbers of people crossed to the breakwater; from two streets, the public were also accustomed to cross over the tracks from the park to ferry-boats.

From Park Row, at the south end of the park, running north a short distance, the railroad company, in 1872, had erected on the west line of its right of way a five-board fence, the north end of which at the time of the injury to the plaintiff was broken down.    The rest of it was in good order.

The park was public ground, free to all, and frequented by children and others as a place of resort for recreation, especially on Sundays.    Not far from the south end, and about opposite the end of the fence, was a band-house for free open-air concerts.

The plaintiff was a boy between eight and nine years of age, bright and well grown, but deaf and dumb.    His parents were laboring people, living, at the time of the accident, about four blocks west of Lake Park.    Across the street from where they lived was a vacant lot where children in the neighborhood frequently played.    On Sunday afternoon, March 17th, 1878, St. Patrick's day, the plaintiff, in charge of a brother about two years older, went to this vacant lot, with the permission of his father, to play; while playing there a procession celebrating the day passed by, and the plaintiff, with other boys, but without the observation of his brother, followed the procession to Michigan avenue at Twelfth street, just south of Lake Park; he and his companions then returned north to the park, in which they stopped to play; a witness, going north along and on the west side of the tracks, when at a point a considerable distance north of the end of the broken fence, saw a freight train of the defendant coming north; turning round toward it he saw the plaintiff on the track south of him, but north of the end of the fence; he also saw a colored boy on the ladder on the side of one of the cars of the train motioning as if he wanted the plaintiff to come along; the plaintiff started to run north beside the train, and as he did so, turned and fell, one or more wheels of the car passing over his arm.    There were four

tracks at this point, and the train was on the third track from the park. The plaintiff had his hands reached out towards the car, as he ran, as if he was reaching after it, and seemed to the witness to be drawn around by the draft of the train, and fall on his back. Amputation of the left arm at the shoulder was rendered necessary, and constituted the injury for which damages were claimed in this suit.

After the evidence in the case had been closed, the court instructed the jury to find a verdict for the defendant, to which ruling the plaintiff excepted. Judgment was entered on the verdict and the plaintiff sued out this writ of error.

*Mr. A. D. Rich, Mr. George C. Fry,* and *Mr. J. W. Merriam* for plaintiff in error submitted on their brief.

*Mr. Ashley Pond* for defendant in error.—There is no statute of the State of Illinois under which it was the duty of the Illinois Central or Michigan Central to fence the right of way at the place of the accident. It is not so claimed by the plaintiff. It is alleged that the duty exists (1) at common law, (2) by force of the ordinance of the city of Chicago granting the right of way to the Illinois Central, and not otherwise.—I. The defendant is not liable at common law for failure to fence the right of way. *Vandergrift* v. *Delaware Railroad Company*, 2 Houston (Del.) 287; *Alton, &c., Railroad Company* v. *Baugh*, 14 Ill. 211; *Boston & Albany Railroad Company* v. *Briggs*, 132 Mass. 24; *Richmond* v. *Sacramento, &c., Railroad Company*, 18 Cal. 351; *Macon, &c., Railroad Company* v. *Baker*, 42 Geo. 300; *Illinois Central Railroad Company* v. *Reedy*, 17 Ill. 580; *Williams* v. *New Albany, &c., Railroad Company*, 5 Ind. 111; *Henry* v. *Dubuque Railroad Company*, 2 Iowa, 288; *Louisville, &c., Railroad Company* v. *Milton*, 14 B. Mon. 75; *Louisville Railroad Company* v. *Ballard*, 2 Met. (Ky.) 165; *Knight* v. *Opelousas, &c., Railroad Company*, 15 La. Ann. 105; *Perkins* v. *Eastern, &c., Railroad Company*, 29 Maine, 307; *Stearns* v. *Old Colony Railroad Company*, 1 Allen, 493; *Williams* v. *Michigan Central Railroad Company*, 2 Mich. 259; *Locke* v. *First Div., &c., Railroad Company*, 15 Minn.

350; *New Orleans, &c., Company* v. *Field*, 46 Miss. 573; *Memphis, &c., Company* v. *Orr*, 43 Miss. 279; *Gorman* v. *Pacific Railroad*, 26 Mo. 441; *Vandergrift* v. *Rediker*, 2 Zabriskie (N. J. L.) 185; *Woolson* v. *Northern Railroad Company*, 19 N. H. 267; *Chapin* v. *Sullivan Railroad Company*, 39 N. H. 53; *Tonawanda Railroad Company* v. *Munger*, 5 Den. 255; *S. C.* aff. 4 N. Y. 345; *Corwin* v. *New York, &c., Company*, 13 N. Y. 42; *Kerwhacker* v. *C. C., &c., Company*, 3 Ohio, 185; *Railroad Company* v. *Riblet*, 66 Penn. St. 164; *Railroad Company* v. *Skinner*, 19 Penn. St. 287; *Tower* v. *Providence, &c., Company* 2 R. I. 404; *Hurd* v. *Rutland, &c., Railroad Company*, 25 Vt. 116; *Stucke* v. *Milwaukee, &c., Company*, 9 Wis. 202. *In re Rensselaer, &c., Railroad Company*, 4 Paige, 553, *contra*, has been disregarded and practically overruled by the subsequent decisions in New York cited above. *Quimby* v. *Vermont Central Railroad Company*, 23 Vt. 387, also *contra*, is followed as to the corporation involved in *Trow* v. *Railroad Company*, 24 Vt., but the doctrine above set forth is fully recognized in the *Hurd* case, 25 Vt. 487, cited above, where the company's liability is put wholly upon the ground of the statutory provision.—II. The defendant is not liable under the ordinance referred to in the declaration. (1.) The ordinance and agreement between the city and the railroad company created no liability other than in covenant. The railroad company may be liable for a breach, but the ordinance and agreement cannot be made the basis of liability to a citizen. *Atkinson* v. *Newcastle Water Works Company*, 2 Exch. Div. 441. (2.) No default is shown in the performance of the conditions of the ordinance and agreement. Some direction from the council as to the character of the structure was a condition precedent to the obligation of the company to erect it. *Lent* v. *Padelford*, 2 Am. L. C. 57, citing *Watson* v. *Walker*, 23 N. H. 471; *Bashford* v. *Shaw*, 4 Ohio St. 263; *Walker* v. *Forbes*, 25 Ala. 139; *Vyse* v. *Wakefield*, 6 M. & N. 442; *S. C.* 7 M. & N. 126; see also *West* v. *Newton*, 1 Duer, 277; *Coombe* v. *Greene*, 11 M. & N. 480; *Brooklyn* v. *Brooklyn City Railroad*, 47 N. Y. 475. (3.) A failure to perform the terms of the ordinance and agreement between the city and the railroad company,

would give no rights except *inter partes*.  *Lowery* v. *Brooklyn City Railroad*, 76 N. Y. 28.  (4.) The ordinance imposed no duties towards intruders on the track.  (5.) The requirements of the ordinance had no reference to the place of the accident. (6.) The ordinance, dissociated from the agreement between the city and the company, cannot create a civil liability enforceable at common law.  The power of the legislature is plenary to compel action on the part of the citizen; but a municipality cannot by ordinance create a civil duty.  *Van Dyke* v. *Cincinnati*, 1 Disney (O.) 532; *Philadelphia & Reading Railroad*, v. *Erwin*, 89 Penn. St. 71; *Heeney* v. *Sprague*, 11 R. I. 456; *Flynn* v. *Canton Company*, 40 Maryland, 312.—III. There is no evidence that the alleged failure to fence was the proximate cause of the injury.

Mr. Justice Matthews delivered the opinion of the court. He stated the facts in the foregoing language and continued :

The question of contributory negligence does not appear to us to arise upon this record.  It is not contended by the counsel for the defendant in error, that, if there was evidence tending to prove negligence on its part, the case could properly have been withdrawn from the jury on the ground that it appeared as matter of law that the plaintiff was not entitled to recover by reason of his own contributory negligence.  The single question, therefore, for present decision is whether there was evidence of negligence on the part of the defendant which should have been submitted to the jury.

The particular negligence charged in the declaration and relied on in argument, is the omission of the railroad company to build a fence on the west line of its right of way, dividing it from Lake Park; a duty, it is alleged, imposed upon it by the ordinance of June 14th, 1852, a breach of which resulting in his injury, confers on the plaintiff a right of action for damages.

It is not claimed on the part of the plaintiff in error that the railroad company was under an obligation, at common law, to fence its tracks generally, but that, at common law, the question is always whether, under the circumstances of the particular case, the railroad has been constructed or operated with

such reasonable precautions for the safety of others, not in fault, as is required by the maxim *sic utere tuo ut non alienum lædas;* that, consequently, in circumstances where the public safety requires such a precaution as a fence, to prevent danger from the ordinary operations of the railroad, to strangers not themselves in fault, the omission of it is negligence; and that it is a question of fact for a jury, whether the circumstances exist which create such a duty.

This principle has been recognized and applied in cases of collisions at crossings of railroads and public highways, when injuries have occurred to persons necessarily passing upon and across railroad tracks in the use of an ordinary highway. "These cases," said the Supreme Court of Massachusetts in *Eaton* v. *Fitchburg Railroad Company,* 129 Mass. 364, "all rest on the common-law rule that when there are different public easements to be enjoyed by two parties at the same time and in the same place, each must use his privilege with due care, so as not to injure the other. The rule applies to grade crossings, because the traveller and the railroad each has common rights in the highway at those points. The fact that the legislature has seen fit, for the additional safety of travellers, imperatively to require the corporation to give certain warnings at such crossings, does not relieve it from the duty of doing whatever else may be reasonably necessary." It was accordingly held in that case, that the jury might properly consider, whether, under all the circumstances, the defendant was guilty of negligence in not having a gate or a flagman at the crossing, although not expressly required to do so by any statute or public authority invested with discretionary powers to establish such regulations.

And the same principle has been applied in other cases than those of the actual coincidence, at crossings, of public highways. In *Barnes* v. *Ward,* 9 C. B. 392, it was decided, after much consideration, that the proprietor and occupier of land making an excavation on his own land, but adjoining a public highway, rendering the way unsafe to those who used it with ordinary care, was guilty of a public nuisance, even though the danger consisted in the risk of accidentally deviating from the road,

and liable to an action for damages to one injured by reason thereof; for the danger thus created may reasonably deter prudent persons from using the way, and thus the full enjoyment of it by the public is, in effect, as much impeded as in the case of an ordinary nuisance to a highway. This doctrine has always since been recognized in England. *Hardcastle* v. *South Yorkshire Ry. Co.* 4 Hurl. & Nor. 67; *Hounsell* v. *Smyth*, 7 C. B. N. S. 731; *Binks* v. *South Yorkshire Ry. Co.*, 3 B. & S. 244.

It has also been generally adopted in this country. *Norwich* v. *Breed*, 30 Conn. 535; *Beck* v. *Carter*, 68 N. Y. 283; *Homan* v. *Stanley*, 66 Penn. St. 464; *B. & O. R. R. Co.* v. *Boteler*, 38 Md. 568; *Stratton* v. *Staples*, 59 Me. 94; *Young* v. *Harvey*, 16 Ind. 314; *Coggswell* v. *Inhabitants of Lexington*, 4 Cush. 307; although *Howland* v. *Vincent*, 10 Metc. 371, is an exception.

The enforcement of this rule in regard to excavations made by proprietors of lots adjacent to streets and public grounds in cities and towns, in the prosecution of building enterprises, and in the construction of permanent areas for cellar ways, is universally recognized as an obvious and salutary exercise of the common police powers of municipal government; and the omission to provide barriers and signals, prescribed by ordinance in such cases for the safety of individuals in the use of thoroughfares, is a failure of duty, charged with all the consequences of negligence, including that of liability for personal injuries of which it is the responsible cause. The true test is, as said by Hoar, J., in *Alger* v. *City of Lowell*, 3 Allen, 402, " not whether the dangerous place is outside of the way, or whether some small slip of ground not included in the way must be traversed in reaching the danger, but whether there is such a risk of a traveller, using ordinary care, in passing along the street, being thrown or falling into the dangerous place, that a railing is requisite to make the way itself safe and convenient."

As the ground of liability in these cases is that of a public nuisance, causing special injury, the rule, of course, does not apply where the structure complained of on the defendant's property, and the mode of its use, are authorized by law; and,

consequently, what has been said is not supposed to bear directly and strictly on the question in the present case, but rather as inducement, showing the ground of legislative authority implied in the ordinance, the breach of which is imputed to the defendant as negligence towards the plaintiff, and as serving to interpret the meaning and application of its provisions.

The ordinance cannot, we think, be treated as a mere contract between the city, as proprietor of the land over which the right of way is granted, and the railroad company, to which no one else is privy, and under which no third person can derive immediately any private right, prescribing conditions of the grant, to be enforced only by the city itself.    Although it takes the form of a contract, provides for its acceptance and contemplates a written agreement in execution of it, it is also and primarily a municipal regulation, and as such, being duly authorized by the legislative power of the State, has the force of law within the limits of the city.    *Mason* v. *Shawneetown,* 77 Ill. 533.

Neither can the ordinance be limited by construction to the mere purpose of preventing animals from straying upon or obstructing the railroad tracks; because, in addition to that, it expressly declares that the walls, fences, or other works required shall be suitable and sufficient to secure persons and property from danger.    This cannot refer to persons and property in course of transportation and already in care of the railroad company as common carrier, for the duty to carry and deliver them safely was already and otherwise provided for by law; nor, can it be supposed, from the nature of the case, that the stipulation was intended as security for any corporate interest of the city.    The proviso in the 6th section, that the company shall construct such suitable gates at crossings as thereafter might be required by the common council to afford safe access to the lake, clearly designates the inhabitants of the city as at least within the scope of this foresight and care, the safety of whose persons and property was in contemplation.

The prevention of animals from straying upon the tracks, and the security of persons and property from danger, are two

distinct objects, for both which the requirement is made of suitable walls, fences, or other protections; and the ordinance, in these two particulars, is to be referred to distinct legislative grants of power to the municipal body. The general act to provide for the incorporation of cities and villages, which constitutes the charter of the city of Chicago, confers upon its city council power: " Twenty-sixth. To require railroad companies to fence their respective railroads, or any portion of the same, and to construct cattle guards, crossings of streets, and public roads, and keep the same in repair within the limits of the corporation. In case any railroad company shall fail to comply with any such ordinance, it shall be liable for all damages the owner of any cattle or horses or other domestic animal may sustain, by reason of injuries thereto while on the track, of such railroad, in like manner and extent as under the general laws of this State, relative to the fencing of railroads." Cothran's Rev. Stat. Ill. 1884, 227. By the general law of the State, requiring railroads to be fenced, except within the limits of municipal corporations, the company omitting performance of the duty is liable to the owner for all damages to animals, irrespective of the question of negligence. Cothran's Rev. Stat. Ill. 1884, 1151.

Whether this provision is limited to the protection of animals, and covers only the case of damage done to them, or whether a failure to comply with the ordinance authorized thereby might be considered as evidence of negligence, in case of injury to person or property, in any other case, it is not necessary for us now to decide; for in the same section of the statute there is this additional power conferred upon the city council:

" Twenty-seventh. To require railroad companies to keep flagmen at railroad crossings of streets, and provide protection against injury to persons and property in the use of such railroads," &c.

The latter clause of this provision is general and unrestricted. It confers plenary power over railroads within the corporate limits, in order that by such requirements as in its discretion it may prescribe, and as are within the just limits of police regulation, the municipal authority may provide protection against

injury to persons and property likely to arise from the use of railroads. And as we have shown by reference to analogous cases, the erection of a barrier between the railroad tracks and the public highways and grounds, particularly such a resort as the Lake Park is shown to be, in the present case, is a reasonable provision, clearly within the limits of such authority. To leave the space between the park and the breakwater, traversed by the numerous tracks of the railroad company, open and free, under the circumstances in proof, was a constant invitation to crowds of men, women and children frequenting the park to push across the tracks at all points to the breakwater, for recreation and amusement, at the risk of being run down by constantly passing trains. A fence upon the line between them might have served, at least, as notice and signal of danger, if not as an obstacle and prevention. For young children, for whose health and recreation the park is presumably in part intended, and as irresponsible in many cases as the dumb cattle, for whom a fence is admitted to be some protection, such an impediment to straying might prove of value and importance. The object to be attained—the security of the persons of the people of the city—was, we think, clearly within the design of the statute and the ordinance; and the means required by the latter to be adopted by the railroad company was appropriate and legitimate. *Mayor, &c., of New York* v. *Williams,* 15 N. Y. 502.

It is said, however, that it does not follow that whenever a statutory duty is created, any person who can show that he has sustained injuries from the non-performance of that duty can maintain an action for damages against the person on whom the duty is imposed; and we are referred to the case of *Atkinson* v. *Newcastle Water Works Co.,* L. R. 2 Exch. Div. 441, as authority for that proposition, qualifying as it does the broad doctrine stated by Lord Campbell in *Couch* v. *Steel,* 3 E. & B. 402. But accepting the more limited doctrine admitted in the language of Lord Cairns in the case cited, that whether such an action can be maintained must depend on the "purview of the legislature in the particular statute, and the language which they have there employed," we think the right to sue, under

the circumstances of the present case, clearly within its limits. In the analogous case of fences required by the statute as a protection for animals, an action is given to the owners for the loss caused by the breach of the duty. And although in the case of injury to persons by reason of the same default, the failure to fence is not, as in the case of animals, conclusive of the liability, irrespective of negligence, yet an action will lie for the personal injury, and this breach of duty will be evidence of negligence. The duty is due, not to the city as a municipal body, but to the public, considered as composed of individual persons; and each person specially injured by the breach of the obligation is entitled to his individual compensation, and to an action for its recovery. "The nature of the duty," said Judge Cooley in *Taylor* v. *L. S. & M. S. R. Company*, 45 Mich. 74, " and the benefits to be accomplished through its performance, must generally determine whether it is a duty to the public in part or exclusively, or whether individuals may claim that it is a duty imposed wholly or in part for their especial benefit." See, also, *Railroad Company* v. *Terhune*, 50 Ill. 151; *Schmidt* v. *The Milwaukee & St. Paul Railway Company*, 23 Wisc. 186; *Siemers* v. *Eisen*, 54 Cal. 418; *Galena & Chicago Union Railroad Company* v. *Loomis*, 13 Ill. 548; *O. & M. Railroad Company* v. *McClelland*, 25 Ill. 140; *St. L. V. & T. H. Railroad Company* v. *Dunn*, 78 Ill. 197; *Massoth* v. *Delaware & Hudson Canal Company*, 64 N. Y. 521; *B. & O. Railroad Company* v. *State*, 29 Md. 252; *Pollock* v. *Eastern Railroad Company*, 124 Mass. 158; Cooley on Torts, 657.

It is said, however, that, in the present case, the failure or omission to construct a fence or wall cannot be alleged as negligence against the company, because, as the structure was to be, as described in the ordinance, of suitable materials and sightly appearance, and of such height as the common council might direct, no duty could arise until after the council had directed the character of the work to be constructed, of which no proof was offered. But the obligation of the company was not conditioned on any previous directions to be given by the city council. It was absolute, to build a suitable wall, fence, or other sufficient work as would prevent animals from straying

upon the tracks and secure persons and property from danger. The right of the council was to give specific directions if it saw proper, and to supervise the work when done, if necessary ; but it was matter of discretion, and they were not required to act in the first instance, nor at all, if they were satisfied with the work as executed by the railroad company. *Tallman* v. *Syracuse, Binghamton & N. Y. Railroad Company*, 4 Keyes, 128 ; *Brooklyn* v. *Brooklyn City Railroad Company*, 47 N. Y. 475.

It is further argued that the direction of the court below was right, because the want of a fence could not reasonably be alleged as the cause of the injury. In the sense of an efficient cause, *causa causans*, this is no doubt strictly true; but that is not the sense in which the law uses the term in this connection. The question is, was it *causa sine qua non*, a cause which if it had not existed, the injury would not have taken place, an occasional cause ? and that is a question of fact, unless the causal connection is evidently not proximate. *Milwaukee & St. Paul Railroad Company* v. *Kellogg*, 94 U. S. 469. The rule laid down by Willes J., in *Daniel* v. *Metropolitan Railway Company*, L. R. 3 C. P. 216, 222, and approved by the Exchequer Chamber, L. R. 3 C. P. 591, and by the House of Lords, L. R. 5 H. L. 45, was this: " It is necessary for the plaintiff to establish by evidence circumstances from which it may fairly be inferred that there is reasonable probability that the accident resulted from the want of some precaution which the defendants might and ought to have resorted to ; " and in the case of *Williams* v. *Great Western Railway Company*, L. R. 9 Excheq. 157, where that rule was applied to a case similar to the present, it was said (p. 162) : " There are many supposable circumstances under which the accident may have happened, and which would connect the accident with the neglect. If the child was merely wandering about and he had met with a stile, he would probably have been turned back; and one at least of the objects for which a gate or stile is required, is to warn people of what is before them and to make them pause before reaching a dangerous place like a railroad."

The evidence of the circumstances showing negligence on the

part of the defendant, which may have been the legal cause of the injury to the plaintiff, according to the rule established in *Railroad Company* v. *Stout*, 17 Wall. 657, and *Randall* v. *B. & O. Railroad Company*, 109 U. S. 478, should have been submitted to the jury; and for the error of the Circuit Court in directing a verdict for the defendant,

> *The judgment is reversed and a new trial awarded.*