Smith, J.
The question presented in the case is whether the court of common pleas erred in withdrawing the evidence offered by the plaintiff from the consideration of the jury and in directing a verdict to be returned for the defendant company, no evidence having been offered by the defendant.
The evidence offered by the plaintiff either showed or clearly tended to show the following facts: Plaintiff’shusband and intestate was a brakeman in the employ of the defendant, and at the time of his injury and death, January 17, 1893, was acting as such on a freight train of the defendant running north from Cincinnati to Dayton. When the train reached Maplewood, about one o’clock in the morning of that day, it was cold and snowing, and there were several inches of snow on the ground. They found there, standing on the side track, six cars which were to be taken north by the train. This train was in charge of a conductor, and there was one other brakeman. On such trains the conductor is the superior officer, and the brakemen are subject to his orders. The safe and usual method of taking up freight cars standing on a switch, as in this case, is by means of a pole, by which they are pushed to the de *166 sired place by .putting one end thereof against the engine and the other against the cars to be added to the train, and freight engines on this and other railroads are usually supplied with such a pole. To take up cars by a running or flying switch is dangerous, as in such case the brakeman who is called upon to discharge the duty of uncoupling them from the engine, has to do it while the train is in motion and while he stands on the front of the engine, and there is great danger that in doing this he will fall to the ground and be run over by the following cars.
On this engine or train on this night there was no such pole, as it was drawn by a passenger engine, which usually is not supplied with one. On reaching Maplewood the conductor and Crumley, the brakeman, looked for a pole on the engine and cars with which to do the switching, but there was none there, and they looked about the station and neighborhood to find one, but could not do so. The inference from this is strong that the conductor, at least, knew that a pole should be used in such cases, but not being able to find one, they proceeded under the direction of the conductor to shift the six cars standing on the side track to the main track by means of a flying switch. The engine pulling five freight cars ran onto the side track, and Crumley, as it was his duty to do, attached the six cars to the front of the engine, which then backed down, pulling the six cars toward the main track,and in attempting at the proper time, and from all that appears, in the proper manner, to uncouple the six cars from the front of the engine by drawing out the pin, so as to allow the engine to proceed without them and make the running switch, he fell to the ground and was run over and killed by the cars following the engine.
The law of 1890, vol. 87, 149, was in force at the time of this occurrence. Section 2 of the act provides as follows:
“Section 2. It shall be unlawful for any such corporation (railroad Company) to knowingly or negligently use or operate any car or locomotive that is defective, or any car *167 or locomotive upon which the machinery or attachments thereto belonging, are in any manner defective.! If an employe of such corporation shall receive any injury by reason of any car or locomotive,or the machinery or attachments thereto belonging, owned and operated, or being run and operated by such corporation,^ such corporation shall be deemed to have had knowledge of such defects before, and at the time such injury is so sustained, and when the fact of such defect shall be made to appear in the trial of any action in the courts of this state, brought by such employe or his legal representatives against any railroad company for damages on account of such injuries so received, the same shall be prima facie evidence of negligence on the part of such corporation.”
And Section 3 makes the person in the employ of the company having the power to direct or control any other employe of such company, the superior of such other employe, and not his fellow servant.
Under this section the question may arise whether the absence of a pole in this case brings the case within the letter or spirit of the section. It having been shown that it is an appliance almost essential for the safety of brakemen in the shifting of such cars from one track to another, and thus dispense with the danger of making a flying switch, and that other companies and this one was accustomed to be supplied with the use of them, it would seem that independent of the statute it would be negligence and want of care not to have one on a freight train for this purpose if such work has to be done. But we also think it comes within the spirit at least of this statute, as much as if there had been one, and it was defective, and by reason of such defect the brakeman had been injured, in which case the company would be liable. And so here,if the absence of a necessary appliance was proximately the cause of the injury to the *168 plaintiff, it should also be liable unless he had by his own negligence contributed to the injury.
Was the absence of the pole, then, and the consequent resort to the flying switch, the proximate cause of the injury to plaintiff’s intestate? The question is not free from doubt. It is manifest, however, that in all probability he would not have been injured if the flying method of shifting the cars had not been adopted. But it was adopted, and in carrying it out, the brakeman came to his death in a manner unusual, but incident to this mode of operation; and it seems to be the doctrine of the law, that a person who is injured may recover damages therefor against another who does an unlawful or negligent act as to him, if it be established that the injury was reasonably connected with the want of precaution as a cause, and that he himself was not guilty of contributory negligence (see 111 U. S., 228); and it seems to us that there was evidence, as in this case, showing or tending to show the dangerous character of the mode of switching resorted to, and the failure of the company to provide the usual appliance to obviate the necessity for making a running switch, and by its officer in charge directing the switching to be made in this way, and then the brakeman was injured in the manner that was not uncommon in such cases; that this failure and conduct on the part of the defendant company was negligence, and was the proximate cause of the injury to plaintiff’s intestate. At all events,it could not be said as a matter, of law that it was not, and, at the least, should have been submitted to the jury as a question of fact under appropriate instructions.
In this case there was no evidence tending to show that there was any contributory negligence on the part of the plaintiff’s intestate other than this, that he attempted to carry out the directions of his superior officer. But this he did, so far as appears, in the usual and ordinary way. It is urged by counsel for defendant in error that, as the evi *169 dence does not show exactly how the accident occurred, or that it did not result from some negligence of Crumley himself, that the trial judge was warranted in directing a verdict to be rendered for the defendant. It is true that the evidence on this point was not very full or explicit, it being given by the conductor himself. He says: “The engine, then, (after being attached to the six cars on the side track) “began to back, pushing the five cars which were in the rear of it, and pulling the six cars which had been standing on the side track towards the main track. When near the main track Crumley, while in the act of pulling the pin to uncouple the six cars from the front of the engine, fell to the ground and was run over by the cars which were following the engine. ’ ’ Here certainly was evidence which did not tend to show negligence on the part of plaintiff’s intestate, but did naturally lead to the conclusion that he fell from the engine while discharging his duties properly; and we see no force in the suggestion that for all there appears, he might have voluntarily and intentionally thrown himself under the wheels of the following cars. It will not do to indulge in mere matters of speculation, with no evidence to support it, or appeal from our knowledge to our ignorance.
It is also urged that Crumley knew that it was dangerous for the brakeman who makes the flying switch, as in this case, and that by entering the service of the company he assumed the risk. As to this it is sufficient to say that so far as the evidene shows, this was the first running switch ever made upon the road, and there is nothing to show that Crumley knew of the danger, other than that he assisted in looking for the pole that night. He had a right to assume that the train would be supplied with the proper appliances, and that hazardous methods would not be resorted to.
In our view the several questions raised should have been submitted to the jury on the evidence offered, and the *170 court was not warranted in withdrawing it from the jury, and directing a verdict for defendant.
Thomas L. Miehie and John W. Wolfe, for plaintiff in error.
Ramsey, Maxwell & Ramsey, contra.
The judgment will therefore be reversed, and the case remanded for a new trial.