† CRUMLER, ADMR'X v. C., H. & D. R. R.

**1. EFFECT OF AN ACCIDENT RESULTING FROM A FAILURE TO PROVIDE NECESSARY APPLIANCES.**

Where an accident occurs to an employee of a railroad company, as a result of the absence of an appliance upon the locomotive which it is customary to provide, the company is placed in the same position under the act of 1890 (87 O. L., 149), as though the appliance had been furnished and the accident had resulted as a consequence of its defective condition.

**2. LACK OF A COMPANY TO SUPPLY NECESSARY APPLIANCES, IS NEGLIGENCE ON ITS PART.**

Independently of the act of 1890 (87 O. L., 149), it would be negligence on the part of a railroad company not to provide such appliances as it is necessary for railroad companies to provide for work of the same character.

**3. WANT OF NECESSARY APPLIANCES, THE PROXIMATE CAUSE OF ACCIDENT.**

Where a locomotive is not provided with a "pole" for use in switching, and as a consequence a train crew resort to the "flying switch" method, and one of their number, while acting under instructions and not himself negligent is injured, the absence of the pole will be regarded as the proximate cause of the injury.

**4. A COURT IS NOT WARRANTED IN DIRECTING A VERDICT FOR DEFENDANT, WHEN.**

An appeal cannot be permitted from our knowledge of a fact to our ignorance, by claiming that the evidence does not show that one run over by a train, while in the discharge of his duty under such circumstances, did not purposely throw himself under the wheels, and a case presenting such facts as these should be submitted to the jury, and a court is not warranted in directing a verdict for the defendant.

ERROR.

SMITH, J.

The question presented by the record in this case is whether the court of common pleas erred in withdrawing the evidence offered by the plaintiff from the consideration of the jury and in directing a verdict to be returned for the defendant company—no evidence having been offered by the defendant.

The evidence offered by the plaintiff either showed or clearly tended to show the following facts: Plaintiff's husband and intestate was a brakeman in the employ of the defendant and at the time of his injury and death, January 17, 1893, was acting as such on a freight train of the defendant running north from Cincinnati to Dayton. When the train reached Maplewood about 1 o'clock in the morning of that day, it was cold and snowing and there were several inches of snow on the ground. They found there, standing on the side track, six cars which were to be taken north by the train. This train was in charge of a conductor and there was one other brakeman. On such trains the conductor is the superior officer and the brakemen are subject to his orders. The safe and usual method of taking up freight cars standing on a switch, as in this case, is by means of a pole, by which they are pushed to the desired place by putting one end thereof against the engine and the other against the cars to be added to the train, and freight engines on this and other

† Affirmed by Supreme Court; unreported, 56 O. S., 781.

5 C. C. 23

railroads are usually supplied with such a pole. To take up cars by a running or flying switch is dangerous as in such case the brakeman who is called upon to discharge the duty of uncoupling them from the engine has to do it while the train is in motion and while he stands on the front of the engine, and there is great danger that in doing this he will fall to the ground and be run over by the following cars.

On this engine or train on this night there was no such pole, as it was drawn by a passenger engine, which usually is not supplied with one. On reaching Maplewood the conductor and Crumley, the brakeman, looked for a pole on the engine and cars with which to do the switching, but there was none there, and they looked about the station and neighborhood to find one but could not do so. The inference from this is strong that the conductor at least knew that a pole should be used in such cases, but not being able to find one, they proceeded under the direction of the conductor to shift the six cars standing on the side track to the main track by means of a flying switch. The engine pulling five freight cars ran on to the side track, and Crumley, as was his duty to do, attached the six cars to the front of the engine and as was usual, and his duty to do, got upon the front of the engine, which then backed down, pulling the six cars toward the main track, and in attempting, at the proper time and from all that appears, in the proper manner, to uncouple the six cars from the front of the engine by drawing out the pin, so as to allow the engine to proceed without them and make the running switch, he fell to the ground and was run over and killed by the cars following the engine.

The law of April 2, 1890, vol. 87, 149, was in force at the time of this occurrence. Section 2 of the act provides as follows:

Section 2. "It shall be unlawful for any such corporation (railroad company) to knowingly or negligently use or operate any car or locomotive that is defective, or any car or locomotive upon which the machinery or attachments thereto belonging, are in any manner defective. If the employee of such corporation shall receive any injury by reason of any car or locomotive, or the machinery or attachments thereto belonging, owned and operated, or being run and operated by such corporation, such corporation shall be deemed to have had knowledge of such defect before, and at the time such injury is so sustained, and when the fact of such defect shall be made to appear in the trial of any action in the courts of this state, brought by such employee or his legal representatives against any railroad company for damages on account of such injuries so received, the same shall be *prima facie* evidence of negligence on the part of such corporation."

And section 3 makes the person in the employ of the company having power to direct or control any other employee of such company, the superior of such other employee and not his fellow servant.

Under this second section the question may arise whether the absence of a pole in this case brings the case within the letter, or spirit of the section. It having been shown that it is an appliance almost essential for the safety of brakemen in the shifting of such cars from one track to another, and thus to dispense with the danger of making a flying switch, and that other companies and this one were accustomed to be supplied with and use them, it would seem that independent of the statute it would be negligence and want of care not to have one on a frieght train for this purpose if such work has to be done. But we think it also comes within the spirit at least of this statute, as much as if there had

been one, and it was defective, and by reason of defect the brakeman had been injured. In such case if the brakeman had been injured, the company would be liable. And so here, if the absence of a necessary appliance was proximate the cause of the injury to the plaintiff, it should also be liable unless he had by his own negligence contributed to the injury.

Was the absence of the pole then, and the consequent result of the resort to the flying switch, the proximate cause of the injury to plaintiff's intestate? The question is not free from doubt. It is manifest, however, that in all probability he would not have been injured if the flying method of shifting the cars had not been adopted. But it was adopted, and in carrying it out, the brakeman came to his death in a manner unusual, but incident to this mode of operation; and it seems to be the doctrine of the law, that a person who is injured may recover damages therefor against another who does an unlawful or negligent act as to him, if it be established that the injury was *reasonably* connected with the want of precaution as a cause, and that he himself was not guilty of contributory negligence (see 111 U. S., 228); and it seems to us that where there was evidence, as in this case showing or tending to show the dangerous character of the mode of switching resorted to, and the failure of the company to provide the usual appliance to obviate the necessity of making a running switch, and by its officer in charge directing the switching to be made in this way, and then the brakeman was injured in the manner that was not uncommon in such cases, that this failure and conduct on the part of the defendant company was negligence, and was the proximate cause of the injury to plaintiff's intestate. At all events it could not be said as a matter of law that it was not, and, at the least, should have been submitted to the jury as a question of fact under appropriate instructions.

In this case there was no evidence tending to show that there was any contributory negligence on the part of plaintiff's intestate other than this, that he attempted to carry out the directions of his superior officer. But this he did, so far as appears, in the usual and ordinary way. It is urged by counsel for defendant in error that, as the evidence does not show exactly how the accident occurred or that it did not result from some negligence of Crumley himself, that the trial judge was warranted in directing a verdict to be rendered for the defendant. It is true that the evidence on this point was not very full or explicit, it being that given by the conductor himself. He says: "The engine then " (after being attached to the six cars on the side track) "began to back, pushing the five cars which were in the rear of it, and pulling the six cars which had been standing on the side track towards the main track. When near the main track Crumley, while in the act of pulling the pin to uncouple the six cars from the front of the engine, fell to the ground and was run over by the cars which were following the engine." Here certainly was evidence which did not tend to show negligence on the part of plaintiff's intestate, but did naturally lead to the conclusion that he fell from the engine while discharging his duty properly; and we see no force in the suggestion that for all that appears, he might have voluntarily and intentionally thrown himself under the wheels of the following cars. It will not do to indulge in mere matters of speculation, with no evidence to support it, or appeal from our knowledge to our ignorance.

It is also urged that Crumley knew that it was dangerous to the brakeman who makes the flying switch, as in this case, and that by en

tering the service of the company he assumed the risk. As to this it is sufficient to say that so far as the evidence shows, this was the first running switch ever made upon the road, and there is nothing to show that Crumley knew of the danger, other than that he assisted in looking for the pole that night. He had a right to assume that the train would be supplied with proper appliances, and that hazardous methods would not be resorted to.

In our view the several questions raised should have been submitted to the jury on the evidence offered, and the court was not warranted in withdrawing it from the jury and directing a verdict for defendant.

The judgment will therefore be reversed, and the cause remanded for a new trial.

*Thomas L. Michie* and *John W. Wolfe*, for Plaintiff in Error.
*Ramsey, Maxwell and Ramsey, contra.*