## NORTHERN PA C. R. CO. v. SULLIVAN.

(Circuit Court of Appeals, Eighth Circuit. October 31, 1892.)

No. 137.

RAILROAD COMPANIES—ACCIDENT AT CROSSING—VIOLATION OF CITY ORDINANCE —NEGLIGENCE PER SE—INSTRUCTIONS.

In an action against a railroad company for personal injuries, it appeared that an engine, which was standing between 30 and 125 feet from the place where a city street crossed defendant's tracks, blew its whistle while a funeral procession was passing over the crossing; that plaintiff's horse, which had just crossed, was frightened by the whistle, and ran away and injured plaintiff; and that an ordinance forbade the blowing of an engine whistle within the city limits, unless at the time there might be imminent and immediate danger to life or property. The court, after charging the jury to inquire whether defendant was negligent in blowing the whistle at the time and place and under the circumstances, charged that if they found that the engineer, at the time and place mentioned and in the city limits, "blew a loud blast of the locomotive whistle, and that at the time there was no imminent or immediate danger to life or property, and the whistle was not sounded as a warning of such danger, then the blowing of the whistle was a negligent act." *Held,* that the latter part of the charge was justified by the common law, irrespective of the ordinance, and, taken as a whole, the instruction was not to the effect that proof of the nonobservance of a city ordinance is a conclusive presumption of negligence.

In Error to the Circuit Court of the United States for the District of Minnesota. Affirmed.

J. H. Mitchell, Jr., and Tilden R. Selmes, for plaintiff in error.

C. A. Ebert, for defendant in error.

Before SANBORN, Circuit Judge, and SHIRAS, District Judge.

SHIRAS, District Judge. The defendant in error, Jeremiah Sullivan, brought this action in the district court of Hennepin county, Minn., to recover damages for personal injuries caused him by being thrown from a buggy, the horse attached thereto having taken fright

at the blowing of a whistle on a locomotive engine on' the road of the plaintiff in error. The case was removed by the defendant company into the United States circuit court for the district of Minnesota, and on the trial before the court and jury the plaintiff recovered a verdict. To reverse the judgment entered in favor of the plaintiff, the defendant company brings the case to this court on a writ of error.

The material facts developed by the evidence are as follows: On the 10th day of November, 1889, the plaintiff below attended a funeral in the city of Minneapolis, which, starting from Cedar avenue, proceeded to the cemetery by way of Monroe street, which crosses the track of the defendant company; that when the funeral procession, which consisted of some 40 carriages and buggies, reached the Monroe street crossing, a freight train on the defendant's road was approaching the same; that the train halted at a point where the track of the defendant road crossed that of the Great Northern Railway Company, distant some 200 or 300 feet from the street crossing; that the freight train was then put in motion, and again halted before reaching the street crossing, at a point variously estimated by the witnesses to be from 30 to 125 feet from the crossing; that Monroe street does not cross the railway at right angles; that at this crossing a flagman is stationed by the railway company, to give warning of danger, in case of need, to parties about to cross the track; that this flagman was at his post on said 10th of November, 1889; that the funeral procession proceeded along Monroe street, across the railway track, the plaintiff being about the middle of the procession; that when the plaintiff had gotten over the crossing, and was still within a short distance thereof, the engineer blew the whistle on the locomotive, at which plaintiff's horse took fright and ran away, the plaintiff being thrown from the buggy, and receiving the injuries complained of; that when the blasts of the whistle were so sounded the train was not in motion; that the train was equipped with air brakes; that upon sounding the whistle the engineer started the train forward, passing over the Monroe street crossing; that at that time there was in force in the city of Minneapolis an ordinance which in effect forbade the blowing of the whistle upon a locomotive engine within the limits of the city of Minneapolis, unless at the time there might be imminent and immediate danger to life or property, in which case the whistle might be sounded as a warning of such danger. The charge of the court to the jury was as follows:

"Your first inquiry will be, was the defendant negligent in blowing the whistle at the time and place and under the circumstances it was blown? An ordinance of this city provides that no person or persons shall sound, or cause to be sounded, blow, or cause to be blown, any whistle of any locomotive engine within the limits of the city of Minneapolis, unless it appears that at the time the act was done there was imminent and immediate danger to life or property, and that the whistle was sounded as a warning of such danger.

"I instruct you that if you find from the evidence that the defendant's engineer at the time and place mentioned, and within the corporate limits of the city of Minneapolis, blew a loud blast or blasts of the locomotive whistle, and that at the time the act was done there was no imminent or immediate danger to life or property, and the whistle was not sounded as a warning of such danger, then the blowing of the whistle was a negligent act. If you find that the defendant was not guilty of negligence within the rule I have laid down, then you will inquire no fur-

ther, but return a verdict for the defendant. But if you find that the engineer blew the whistle at the time and place mentioned, and that the blowing of the whistle was a negligent act, then you will inquire whether that act of negligence frightened plaintiff's horse, and caused the wrecking of the buggy and the running away of the horse, by reason of which the plaintiff himself suffered the alleged injuries complained of.

"If you find these issues in favor of the plaintiff, that is, that the whistle was blown, and that at the time and under the circumstances it was blown it was a negligent act, and that that act of negligence was the direct and proximate cause of the plaintiff's injury, you will then inquire into the extent of his injuries, and the damage sustained by reason thereof."

There are five assignments of error, but in the brief of counsel for the plaintiff in error it is said: "The assignments of error in effect raise only this one question: Did the court err in ruling that proof of the nonobservance of a city ordinance is a conclusive presumption of negligence?"

Counsel for the railway company have collated in their brief a large number of cases in which this general proposition has been discussed, and from a consideration thereof reach the conclusion that "the three rules deducible from the decisions are: (1) The nonobservance of a city ordinance is not any evidence whatever of negligence; (2) it is evidence of negligence to go to the jury; (3) it is conclusive evidence of negligence;" and, further, that "the decisions of the supreme court of the United States seem to have left no doubt as to the rule in this court; that is, that the failure to observe a city ordinance is simply evidence of negligence, and this, it is submitted, is in accordance with the weight of authority, and the only logical conclusion;" and in support of the latter proposition counsel cite the cases of Hayes v. Railroad Co., 111 U. S. 228, 4 Sup. Ct. Rep. 369, and Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. Rep. 679.

The only portion of the charge of the court to which exception was taken is that sentence wherein the court said:

"I instruct you that if you find from the evidence that the defendant's engineer, at the time and place mentioned, and within the corporate limits of the city of Minneapolis, blew a loud blast or blasts of the locomotive whistle, and that at the time the act was done there was no imminent or immediate danger to life or property, and the whistle was not sounded as a warning of such danger, then the blowing of the whistle was a negligent act."

In determining the meaning of this charge it must be read in connection with the other portions of the instructions, and in the light of the facts developed in the evidence, and, so reading it, we do not concur with counsel for the railway company in the assumption that the court intended thereby to lay down the broad proposition that under all circumstances a violation of a city ordinance is per se negligence. On the contrary, the jury were expressly charged that "your first inquiry will be, was the defendant negligent in blowing the whistle at the time and place and under the circumstances it was blown?" The jury were not instructed to determine from the evidence whether the city ordinance was violated, but to determine whether the whistle was in fact blown, and, if so, whether the blowing of the same at the time, place, and under the circumstances was or not an act of negligence. In defining to the jury what would be deemed to be negligence in this particular, the court used the phraseology found in the city ordinance, adopting the same as a correct statement of the law

applicable to the facts of the case. The declaration of the court was not that the act of blowing the whistle was negligence, because thereby the ordinance was violated, but that if there was not any imminent or immediate danger to life or property requiring the blowing of the whistle as a warning of such danger, then the blowing of the same at the time, place, and under the existing circumstances was negligence.

It is well settled that when there is no substantial dispute as to the material facts, and diverse conclusions cannot be reasonably drawn therefrom, the question of negligence becomes one of law upon which the court may instruct the jury, and the court may instruct the jury that if they, from the evidence, find certain facts established, then the conclusion of negligence follows. Thus in Cooley on Torts, 804, it is said:

"If the facts are not ambiguous, and there is no room for two honest and apparently reasonable conclusions, then the judge should not be compelled to submit the question to the jury as one in dispute. On the contrary, he should say to them, 'In the judgment of the law, this conduct was negligent,' or, as the case might be, 'There is nothing in the evidence here which tends to show a want of due care.' In either case he draws the conclusion of negligence or the want of it as one of law."

In Shear. & R. Neg. § 56, the rule is stated in the following terms:

"When the facts are clearly settled, and the course which common prudence dictated can be clearly discerned, the court should decide the question as a matter of law."

In Railroad Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. Rep. 569, this question is considered at length in a case wherein a person was injured by a collision between a vehicle in which he was riding and certain freight cars, and in which case the trial court instructed the jury that the facts showed that the railway company had been guilty of negligence, as a matter of law. After reciting the facts, the supreme court states the proposition and the rule of law thereon as follows:

"Upon substantially these facts, about which there could not be any dispute, the court instructed the jury, as matter of law, that the railroad company was negligent in respect to its duty to persons traveling upon the public road in question; and that the plaintiff was entitled to recover damages for any injuries sustained by him as the result of such negligence, unless it appeared that he contributed to such injuries by his own carelessness. It is contended that the court erred in not submitting to the jury the issue as to defendant's negligence. Undoubtedly, questions of negligence, in actions like the present one, are ordinarily for the jury, under proper directions as to the principles of law by which they should be controlled. But it is well settled that the court may withdraw a case from them altogether, and direct a verdict for the plaintiff or the defendant, as the one or the other may be proper, where the evidence is undisputed, or is of such conclusive character that the court, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict returned in opposition to it. Insurance Co. v. Doster, 106 U. S. 30, 32, 1 Sup. Ct. Rep. 18; Griggs v. Houston, 104 U. S. 553; Randall v. Railroad Co., 109 U. S. 478, 482, 3 Sup. Ct. Rep. 322; Anderson County Com'rs v. Beal, 113 U. S. 227, 241, 5 Sup. Ct. Rep. 433; Schofield v. Railway Co., 114 U. S. 615, 618, 5 Sup. Ct. Rep. 1125.

" 'It would be an idle proceeding,' this court said in North Pennsylvania R. Co. v. Commercial Bank, 123 U. S. 727, 733, 8 Sup. Ct. Rep. 266, 'to submit the evidence to the jury when they could justly find only one way.' In the present case it was incumbent on the plaintiff, as a condition of his right to recover, to prove that the defendant was guilty of negligence, resulting in his being injured, and, that issue being in his favor, he was entitled to a verdict unless it appeared that his own negligence substantially contributed to his injury. If the evidence was so conclusive against the defendant, upon the question of its negligence, that the

jury could not reasonably find to the contrary, it was competent for the court, within the doctrines of the cases above cited, to so instruct them, leaving the jury to determine the question of the plaintiff's negligence, in respect to which the evidence is conflicting.

"The inquiry, therefore, is whether the court erred in holding, as matter of law, under the evidence, that the defendant was guilty of negligence.   Upon this question we entertain no doubt.   While those using a public highway are under a duty to keep out of the way of railroad cars crossing it, and to exercise to that end such care as the circumstances make necessary, the railroad company, in having cars upon its road, is bound to observe like care towards those who, while traveling upon such highways, whether on foot or in vehicles, are obliged to pass over its tracks.   The right of a railroad company to the use of its tracks for the movement of engines and cars is no greater in the eye of the law than the right of an individual to travel over a highway extending across such tracks.   The former is granted, subject to the condition, necessarily implied, that it shall be so used as not unreasonably to interfere with or abridge the latter.   The obligation to use one's property in such a manner as not to injure that of others rests equally upon corporations and individuals.   The duty of railroad companies whose tracks cross public highways at grade to give warning to those traveling upon them has been under consideration in many cases.   When the subject is regulated by statute, it may not be difficult, in a particular case, to determine whether the railroad company has performed its duty in that regard to the public.   If there be no statute prescribing in what mode the necessary warning shall be given when a train of cars approaches a public highway that crosses a railroad track at grade, the question of negligence must be determined by the special circumstances of each case.   In some localities, in thickly settled communities, greater vigilance and more safeguards are required upon the part of the railroad company than would be necessary in other localities.   What would be due care in one locality might be negligence in another.   A very high degree of caution and circumspection is required under some circumstances.   Without attempting to formulate a general rule applicable in every case of injury to person or property, it is sufficient here to say that the severing of the defendant's train of cars in the nighttime, leaving a part of them, uncontrolled otherwise than by ordinary brakes, to run across a public highway at grade, without some warning, by a flagman or by bell or whistle, or in some other effective mode, that they were approaching, was in such obvious disregard of the rights of persons using that highway that the court was justified in saying, as a matter of law, not simply that such facts were evidence of negligence, but that they constituted negligence, upon part of the company.   It was justified in so instructing the jury, because every one knows, and therefore the court below knew, that such use of the defendant's tracks, where they crossed the county road, unnecessarily endangered the safety of any one who at the time crossed the railroad tracks while traveling on that highway.   *  *  *   The court, in our judgment, did not err in holding, as matter of law, upon the undisputed facts in the case, that the defendant was guilty of negligence in the particulars to which we have adverted."

We have quoted at length from this decision of the supreme court because the rule therein given and the reasoning upon which it is based are so closely applicable to the case at bar, and so clearly sustain the action of the trial court.   Certainly it is a matter of common knowledge that horses are liable to take fright at the escaping steam and noise caused by the blowing of locomotive whistles in close proximity to them.   The management of one's own property in such a way as to cast unnecessary risk and danger upon another is negligence, and therefore the trial court was entirely justified in instructing the jury that if the engineer on defendant's train, when the same was standing still near to the street crossing, and when the vehicles composing the funeral procession were upon the crossing, or in close proximity thereto, without need or cause therefor, blew the engine whistle, he was guilty of negligence in so doing.   In the absence of any ordinance in force in the city of Minneapolis, the action of the court was justified and demanded by the principles of the common law, and in

this particular, under the existing facts, the provisions of the city ordinance are in accord with the rule of the common law.

The court left it to the jury to say whether at the time the whistle was blown there existed any immediate or imminent danger to life or property which would require the blowing of the whistle as a warning of danger, in which case the court ruled that the law would not hold the blowing of the whistle to be an act of negligence. The verdict of the jury, being for the plaintiff below, necessarily negatives any claim that the whistle was sounded as a warning of immediate danger to either property or persons, and therefore the proposition is reduced to the question whether the trial court, under the facts of the case, was justified in holding, as matter of law, that the engineer was guilty of negligence in that when protection or care for life or property did not call for the sounding of the whistle as a warning against danger, and when by the .terms of the city ordinance then in force he was forbidden to sound the whistle, he nevertheless blew the same when the plaintiff and others, with the horses and vehicles forming the funeral procession, were in close proximity to the engine, and thereby subjected the plaintiff and others to the danger of their horses taking fright at the steam and sound proceeding from the whistle thus blown. In our judgment the facts of this case fully justified such ruling on part of the trial court, and no just exception can be taken to the charge either in whole or in part. As we construe the charge as a whole, the trial court did not rule broadly that a violation of a city ordinance·is always conclusive evidence of negligence, nor did the court give to the ordinance in question any other or greater probative force than was awarded to the ordinances in the cases of Hayes v. Railroad Co., 111 U. S. 228, 4 Sup. Ct. Rep. 369, and Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. Rep. 679, upon which counsel for plaintiff in error rely as giving the rule applicable to this case. We do not, therefore, feel called upon to decide the abstract proposition discussed by counsel for plaintiff in error, to wit, whether a violation of a city ordinance, lawfully passed for the protection of life or property, is to be deemed negligence per se because the standard of care fixed by the ordinance has not been observed, or whether such violation is but a circumstance to be submitted to and weighed by the jury in connection with all the other facts in considering the question of negligence. The judgment of the circuit court is affirmed.