SARAH S. JOHNSON v. ST. PAUL CITY RAILWAY COMPANY.[1]

January 19, 1897.

Nos. 10,268—(215).

Street Railway—Negligence.

*Held*, that the evidence justified the jury in finding that plaintiff's injury was caused by the negligence of those in charge of defendant's car.

Same—Contributory Negligence.

Also, that there was no evidence to submit to the jury on the question of plaintiff's contributory negligence.

Same—Damages.

Also, that the damages awarded were excessive, and that a new trial should be granted unless plaintiff will consent to a reduction of the verdict.

Appeal by defendant from an order of the district court for Ramsey county, Otis, J., denying a motion for judgment notwithstanding the verdict or for a new trial. Modified.

*Munn, Boyesen & Thygeson*, for appellant.
*Daniel W. Doty*, for respondent.

MITCHELL, J. This was an action to recover damages for personal injuries. The plaintiff was riding in a funeral procession in a carriage driven by, and in the control of, her daughter-in-law. The funeral procession started on Eighth street, west of Broadway, in the city of St. Paul, and proceeded east on Eighth street to the intersection of that street with Broadway, where it crossed the railway tracks of the defendant, and then proceeded up the east side of Broadway. The carriage in which plaintiff was riding was near the rear of the procession, and while it was crossing the railway tracks it was struck by one of defendant's cars going south on Broadway, resulting in the injuries complained of. The allegations of the complaint are to the effect that the accident was caused by the negligence of defendant's servants who were in charge and operating the car. The answer denied any negligence on part of defendant's servants, and alleged that the plaintiff's injuries were caused solely by her own negligence. Such were the issues as made by the pleadings.

1 Reported in 69 N. W. 900.

Upon the trial the main controversy was as to whether the collision was caused by the negligence of the person operating the car or by that of the person driving the carriage in which plaintiff was riding. The evidence on behalf of plaintiff tended to show that the driver of the carriage was, in the exercise of proper care, following the line of the funeral procession, and crossing the railway tracks at or near the center of the intersection of Eighth and Broadway streets, when the motorman, without giving any warning of the approach of his car, negligently ran into the carriage. On the other hand, the evidence on behalf of the defendant tended to prove that the driver of the carriage, instead of following in the funeral procession and crossing the tracks in the center of Eighth and Broadway, turned up the west side of the latter street as if going to drive up on that side of the tracks, but, after she had driven a short distance, she suddenly turned her horse across the railway tracks within 10 or 12 feet of the approaching car, when it was impossible for the motorman to stop it in time to prevent the collision; and that she did this notwithstanding the giving of constant signals of the approach of the car.

All that is necessary to be said as to the weight of the evidence is that, in our opinion, the preponderance was decidedly in favor of the contention of the plaintiff, especially as to where the driver attempted to cross the railroad tracks, and was ample to justify a verdict in favor of the plaintiff.

Aside from the amount of damages awarded, the only important question in the case is whether the court erred in refusing to give the jury defendant's second request to charge, which was as follows:

"That the plaintiff is bound to exercise such care as a reasonable person would exercise under similar circumstances; and, if she failed to exercise reasonable care and such failure contributed to her injury, she is guilty of contributory negligence, and cannot recover."

Of course this was made an issue by the pleadings, and the request, as far as it goes, is doubtless correct as a general abstract proposition of law. The question remains, however, whether, under the circumstances, the defendant was entitled to have it given to the jury.

The record presents a rather peculiar state of facts. The plaintiff was riding in a vehicle owned and driven by another. There

was no evidence that she had or exercised any control over the driver, or her management of the horse, or that there was any relation of master and servant or principal and agent between them, or that they were engaged in a joint enterprise in any such sense as to make the plaintiff responsible for the negligence of the driver within the doctrine of Howe v. Mplis., St. P. & S. S. M. R. Co., 62 Minn. 71, 64 N. W. 102. But, as was said in that case, the fact that plaintiff was not responsible for the driver's negligence will not relieve her from responsibility for her own negligence. She admitted on her cross-examination that she was familiar with the locality, and knew of the existence of the street-car tracks; that she did not look or listen for approaching cars, but sat in a deep study, with her eyes cast down, feeling entirely safe, as she was riding in a funeral procession. There is no evidence that her daughter-in-law was not a safe and competent driver, or that plaintiff knew, or had any reason to believe, that she was not performing her duty in exercising proper care in driving upon or across the street-railway tracks.

Assuming that plaintiff's version of the facts is correct that the carriage was following in the funeral procession, and crossing the tracks in the center of the crossing of Eighth and Broadway, where most of the carriages had just crossed, there was certainly nothing in the circumstances to suggest special or extraordinary vigilance, but, on the contrary, everything to make plaintiff feel, as she says, perfectly safe. It must also be kept in mind that crossing a street-railway track is ordinarily accompanied with very much less danger than crossing the tracks of a steam railway, and that the standard of reasonable care is very different, especially at a street crossing. The fact that one is driving in a funeral procession, which is readily seen, and not usually interrupted, by those in charge of street cars, is also calculated to inspire a feeling of safety, just as it did in the plaintiff. The age of the plaintiff is also to be kept in mind. All that the law requires of an infant is a degree of care commensurate with its age and discretion. We think the same rule should apply to old people, whose senses are blunted, and mental faculties impaired, by age. Like children, they are accustomed to intrust their safety to those who are younger and stronger mentally and physically than themselves; and within reasonable limits they may do so without being guilty of negligence.

Suppose, on the other hand, we accept as true the statements of defendant's witnesses that the driver of the carriage turned up Broadway as if intending to go up the west side of that street without crossing the car tracks, and then suddenly turned the horse on the tracks within a few feet of the approaching car. 'There is no evidence that plaintiff directed this, or knew in advance or in time to prevent it, that the driver intended to do this. On the contrary, defendant's evidence, if true, tends to show that it was done so suddenly that plaintiff could neither have anticipated nor prevented it. The same fact which would have justified the motorman in assuming that the driver was going to continue her course would certainly have justified the plaintiff in indulging in the same assumption.

Of course, no hard and fast rule can ordinarily be laid down, except in the most general terms, as to when the question of negligence is a question for the jury. Every case must depend on its own particular facts. But, whichever version of the facts is accepted as true, bearing in mind that the burden of proof on this issue was on the defendant, we are of opinion that under the peculiar combination of circumstances disclosed in this case there was no evidence to go to the jury on the question of plaintiff's contributory negligence, and for that reason, if no other, defendant's request to charge was properly refused.

This conclusion finds support in the manner in which the case was tried and submitted. While the issue of plaintiff's negligence was tendered by the answer, yet, as already stated, the contest on the trial was over the negligence of the driver of the carriage and the negligence of the motorman. Nothing occurred on the trial, as far as we can discover from the record, to suggest, directly at least, that the question of plaintiff's negligence was being made an issue, except the cross-examination of the plaintiff, which appears to have been directed to that question. When plaintiff's counsel was examining her as a witness in her own behalf, for the purpose of proving affirmatively that she was in the exercise of ordinary care, the court stopped him, saying, "There is no suggestion here yet that there was any contributory negligence on her part;" whereupon counsel dismissed the witness. Defendant's counsel was silent, and made no suggestion that he proposed to make an issue on that question.

After the evidence closed, the court opened his charge to the jury

by stating that the defense was that the accident did not occur through any fault or negligence of the person in charge of the car, but was the result solely of the negligence of the driver of the carriage in which plaintiff was riding. Thereupon plaintiff's counsel interrupted the court, stating that the answer alleged that it was solely through the negligence of the plaintiff. The court replied, in substance, that it made no difference what the pleadings alleged, that the question was what was claimed on the trial, and that he had stated the matter exactly as claimed by the parties upon the trial. Counsel was again silent, and interposed no objection to the view expressed by the court. The court then proceeded to instruct the jury, limiting the questions which they were to determine to the following: Did the accident occur through the negligence, or any negligence, on the part of the person in charge of the street car? Or was it through the negligence or sole negligence of the person driving the carriage? Or was it inevitable accident for which nobody was responsible? No exception was taken to these instructions. The court then charged the jury at considerable length.

Counsel for defendant had submitted to the court numerous requests to charge, among which was the one the refusal to give which is now assigned as error. Most of the others were given. This one contains a mere abstract proposition of law embodied in the most general terms, without any reference to any particular act of omission or commission which defendant claimed to constitute contributory negligence, containing no definitions of negligence or reasonable care, and not alluding to the question of the burden of proof. If given, it could have been of but little assistance to the jury. It was probably not obligatory on counsel for defendant to disabuse the minds of the court or of opposing counsel of an erroneous impression as to what were the issues under the evidence. It is also true, as counsel claims, that, if he saved the point by one exception, he was not bound to repeat it. We do not rest our decision on what thus occurred on the trial. We only refer to it because we think that it shows a state of circumstances that should incline a court towards an affirmance where the case is a border one, and it is a very close question whether the evidence made a case for the jury upon the issue to which the request was directed.

2. The only other question is whether the damages are excessive.

Plaintiff was between 75 and 76 years old, previously in somewhat feeble health, although able to take care of her room, and assist in the household work of her daughter-in-law, with whom she made her home. This injury consisted of a fracture of one of the bones on the outer side of the left ankle, and the tearing of the lateral ligaments of the ankle, and injury to the joint. The nature or extent of the injury to the joint does not appear. She suffered great pain, and was confined to her bed for three months, requiring constant care. She still suffers some pain, and according to the evidence of the physicians, which was not rebutted, she will never be free from pain, and will never be able to walk without a crutch, and hence will constantly require more or less care and attention. This will naturally, if not necessarily, affect her general health, and deprive her, during the remainder of her days, of much of the pleasure in life which only those can enjoy who are possessed of a sound body. The jury awarded her $4,000.

Of course, these injuries are very serious, and call for very substantial damages. But it must be remembered that the plaintiff is in the late autumn of life. According to the annuity tables, her expectation of life was only from six to seven years. Her natural infirmities would necessarily increase with her age, even although she had not received this injury; and for this the defendant, of course, is not liable. Old people naturally and properly command our sympathy. They have a right to pass the remainder of their days in as much comfort and happiness as the natural infirmities of age will permit. But still the fact remains that, estimated from a strictly pecuniary standard,—which is the correct one in these cases, —the damage to an old person, near the close of life, is much less than that which would result from a similar injury to one in youth, or the prime of life, whose days of pleasure and usefulness are still before them. Put at interest, at even 5 per cent., the amount awarded plaintiff would yield her an annual income of $200 for the remainder of her life, and still leave the principal unimpaired for her heirs or legatees. If used in purchasing an immediate life annuity, it would, even on a 4 per cent. basis, purchase an annuity of at least $628 for the remainder of her life.

There is another consideration which we think we may take into account, and that is that, however statesmen and financiers may dis-

agree as to the cause, a given sum of money has greater value—that is, greater purchasing power—than it had years ago.   Decisions may be found, probably including some of our own, which would, by comparison, justify the size of this verdict.   But our conclusion is that it is so clearly excessive that it ought not to stand.

Ordered, that a new trial be granted, unless within 15 days after a remittitur is filed in the district court the plaintiff files her consent that the verdict be reduced to $2,500, in which case the order appealed from is affirmed, and judgment may be entered on the verdict as thus reduced.   Neither party to be allowed any statutory costs on this appeal.

CANTY, J.   I cannot concur in the portion of the foregoing opinion which holds that there was no evidence to be submitted to the jury on the question of plaintiff's contributory negligence.   I fully concur in the opinion in the Howe case, that the passenger is not responsible for the negligence of the driver, over whom he has no control, but that he is responsible for his own negligence in failing to observe whether or not the driver is doing his duty in looking out for the safety of such passenger, and in failing to take proper steps for his own safety if the driver is not doing so.   I am also of the opinion that, whether the vehicle is crossing an ordinary commercial railway or a street railway, the question of the passenger's negligence is ordinarily a question for the jury, and that it was such a question in this case.   I agree with the majority that the damages awarded by the jury are excessive.