SHELLABERGER v. FISHER.

(Circuit Court of Appeals, Eighth Circuit.  March 2, 1906.)

No. 2,251.

1. CARRIERS—AUTOMATIC ELEVATOR—ABSENCE OF OPERATOR NOT ACTIONABLE BY PASSENGER OF ORDINARY DISCRETION.

The operation of an automatic, push-button, electrical passenger elevator is not negligence which is actionable by any passenger except a child of years so tender that he cannot know the danger and appreciate the risk of his contact with the door or side of the shaft when the car is moving, because a passenger of sufficient maturity and discretion to appreciate this danger and risk would be guilty of contributory negligence if he permitted himself to suffer from it.

2. SAME—ABSENCE OF OPERATOR MAY BE ACTIONABLE BY CHILD OF TENDER YEARS—FACTS.

The operation of such an elevator. to carry passengers without an operator in an apartment building where several children under 10 years of age lived, and used it, in a city in which the duty to employ an operator was imposed  by ordinance and. the failure to discharge this duty was made a misdemeanor, constitutes sufficient evidence of negligence actionable by a child between 5 and 6 years of age, who was injured while running the elevator by getting her leg caught between the floor of the car and the second floor of the building as the car ascended, to warrant the submission of the question of negligence and the question, whether or not such negligence was the proximate cause of the injury, to a jury.

3. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—CHILD TOO YOUNG TO APPRECIATE HER RISK NOT GUILTY OF.

A child of years so tender that he cannot understand or appreciate the risk he runs is not chargeable with the duty to avoid it, and hence is not guilty of contributory negligence, if he fails to do so.  The duty of an infant is commensurate with his maturity and capacity.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Negligence, §§ 121–129.]

4. CARRIERS—NEGLIGENCE—OWNER OF PASSENGER ELEVATOR OWES HIGHEST DEGREE OF CARE.

Owners and operators of passenger elevators owe to their passengers the duty to exercise the highest degree of care for their safe transportation.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, §§ 1092. 1194.]

5. NEGLIGENCE—VIOLATION OF ORDINANCE IMPOSING DUTY OF CARE REBUTTABLE EVIDENCE OF NEGLIGENCE.

The violation of a duty of care imposed by a valid ordinance or law constitutes rebuttable evidence of negligence.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Negligence, § 220.]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Western District of Missouri.

Clifford Histed (James H. Harkless and Charles S. Crysler, on the brief), for plaintiff in error.

R. R. Brewster (C. E. Burnham, on the brief), for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. In February or March, 1904, the defendant below purchased an apartment house in Kansas City in which there was an automatic, push-button, electrical passenger elevator, which had been installed by the former owner of the property and was used to transport the tenants to and from their rooms. From November, 1903, until two or three weeks after the defendant bought the property, this elevator was in charge of an operator; but he left at the latter time and thereafter the tenants operated the elevator themselves. Dorothy Fisher, the plaintiff, was a child between five and six years of age who had lived in one of the apartments in this house with her parents from November, 1903. On May 13, 1904, although she had been forbidden so to do by her parents, she entered the car of the elevator at the first floor and pushed the button to cause it to ascend to the second floor. As it rose one of her legs was caught and crushed between the floor of the car and the second floor of the building. She sued and recovered a judgment of $4,500 against the defendant for causal negligence in that the latter failed to employ any one to guard and operate the elevator. This writ of error was sued out to reverse this judgment.

The class of elevators of which this was one was conceived and introduced to avoid the danger and expense of an operator. Elevators of this type had been placed in operation in various parts of the country during the five years preceding the date of this accident. At the time of the accident several hundred of them were in operation, some in apartment houses, some in private residences and some in mercantile establishments. They were thought to be particularly desirable for apartment houses and private residences. They were ordinarily used without operators, but the latter were sometimes employed in business houses during the hours when many people were using the elevators. The elevator on which the accident happened was a perfect one of its type. The car itself had no door, but at the opening in the elevator shaft at each landing there was a collapsible door of vertical iron rods one-half inch in width and three inches apart when the door was closed. The car was immovable unless these doors were closed and locked and none of the doors could be unlocked or opened while the car was moving. There was a push-button at each landing and pressure upon this button would cause the car to come to that landing. One who desired to use it would push back the door, enter the elevator and close the door again. Within the car there was a push-button for each floor and the pressure upon any button would cause the car to move to and stop at the corresponding floor. There was a lever by means of which the car could be stopped between the floors. The lever and all these push-buttons were within reach of the plaintiff, and she knew how to operate the car. The space between the floor of the car and the door of the shaft when closed was 2½ inches and the space between the floor of the car and the second floor of the building was 1½ inches. Several children who were less than 10 years old lived in the apartment house in which this elevator was situated. It was naturally alluring to them and they had sometimes played with and operated it. There was

an ordinance in force in Kansas City which declared it to be the duty of every person who used or operated any elevator, except hand-power elevators, to employ a competent person over 16 years of age to operate it, and which made a failure to discharge that duty a misdemeanor. Upon this state of facts the court below denied a motion of the defendant at the close of the evidence to instruct the jury to return a verdict in her favor, and this ruling is her chief ground of complaint.

The first reason why this ruling should be reversed which her counsel present is that its affirmance will constitute a judicial declaration that the operation of any automatic, push-button, electrical passenger elevator without an operator constitutes negligence and will render futile all the labor and ingenuity which have perfected this admirable machine for the express purpose of dispensing with the operator. The evidence in this case does not invoke a decision of this nature. The only danger from the operation of this elevator which the evidence disclosed was that of impact between the passenger and the closed door or side of the shaft while the car was moving. This danger was obvious to a person of ordinary discretion and intelligence. No one but a child of tender years could fail to know and to appreciate the risk of such a contact or could fail to be guilty of contributory negligence if he permitted himself to suffer from it. Therefore, the failure to employ an operator for an elevator of this character is not actionable by any passenger except a child of years so tender that he cannot know and appreciate the risk of his contact with the door or side of the shaft when the car is moving. The case in hand falls under an exception to the general rule because the ordinance of Kansas City imposed the duty to employ an operator upon the defendant and made her failure to do so evidence of actionable negligence for the consideration of the jury (Hayes v. Michigan Central R. Co., 111 U. S. 228, 236, 241, 4 Sup. Ct. 369, 28 L. Ed. 410; Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 419, 12 Sup. Ct. 679, 36 L. Ed. 485; Northern Pacific R. Co. v. Sullivan, 3 C. C. A. 506, 514, 517, 53 Fed. 219, 221, 224) and because the plaintiff was too young to appreciate the risk she ran and the law in the absence of the ordinance charged the defendant with the duty to exercise reasonable care to protect such a child from any obvious danger to which the defendant exposed her. In Railroad Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745, a child six years of age who lived three-quarters of a mile distant from a railroad turntable was injured while operating it with two other boys, 9 and 10 years of age, without right or license, and the Supreme Court sustained a judgment against the company on the ground that it owed to these children the duty to use reasonable care to fasten or otherwise guard an article so attractive to children in such a way that they might not operate it and injure themselves thereby. To the same effect is Keffe v. Milwaukee & St. Paul, Ry. Co., 21 Minn. 207, 212, 18 Am. Rep. 393, where the Supreme Court of Minnesota, speaking of the railroad company, said:

"When it sets before young children a temptation which it has reason to believe will lead them into danger it must use ordinary care to protect them from harm."

An automatic elevator is not a less enticing plaything and a landlord who furnishes the former for the use of a tenant and his family owes a much higher duty to one of his children than a railroad company owes to a trespassing boy. Owners and operators of elevators owe to their passengers the duty to exercise the highest degree of care for their safe transportation. Mitchell v. Marker, 10 C. C. A. 306, 309, 62 Fed. 139, 142, 25 L. R. A. 33; Treadwell v. Whittier, 80 Cal. 574, 22 Pac. 266, 5 L. R. A. 498, 13 Am. St. Rep. 175, 196.

Two other reasons why the court should have directed a verdict for the defendant are urged, that the plaintiff assumed the risk of the use of the elevator and that the failure to employ an operator was not the proximate cause of her injury. The doctrine of assumption of risk is not applicable to this case because the relation of master and servant did not exist between the parties and the child was not guilty of contributory negligence because she did not possess the maturity or capacity to know the danger or to appreciate the risk to which she was exposed and therefore she was not chargeable with any legal duty to avoid it. The duty of an infant is commensurate with her age and discretion. Railroad Co. v. Stout, 17 Wall. 657, 660, 21 L. Ed. 745; Johnson v. St. Paul City Ry. Co., 67 Minn. 260, 262, 69 N. W. 900, 36 L. R. A. 586.

Nor does it conclusively appear from the evidence that the absence of the operator was not the proximate cause of the accident. It was the duty of the court at the close of the evidence with reference to this question of proximate cause, as it was with reference to every other question of fact or of mixed law and fact, to consider and determine whether or not there was any substantial evidence from which the jury could lawfully infer that the failure to employ an operator was the proximate cause of the injury, and to withdraw this question from the jury if they were not warranted in reaching the conclusion that the lack of the operator was the proximate cause of the accident. But if there was evidence from which they might lawfully reach this conclusion, the question of proximate cause was for the jury. An injury that is the natural and probable consequence of an act of negligence is actionable and such an act is the proximate cause of the injury. But an injury which could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not the proximate cause of it. In view of the established facts that the city council of Kansas City had foreseen danger from the operation of an elevator without a competent employé to guard and direct it and had imposed the duty to employ one, that this elevator was easily operated and made an enticing plaything for children, that the plaintiff's parents had anticipated harm to her from her attempt to use it and had forbidden it, that she was not six years of age and there were several children of tender years in the house who would naturally play upon and about this elevator, and that the former owner of the building had employed an operator, this case was not without evidence from which the jury might lawfully find that a person of ordinary prudence and intelligence in the situation of the defendant would have foreseen an injury of the nature which the plaintiff sustained as the natural and probable consequence of a failure to continue

an operator in charge of the elevator. The question for the jury was not whether or not the absence of an operator was the active cause, but whether or not it was the cause without which the injury would not have taken place, for this is the legal meaning of proximate cause in this connection. In Hayes v. Michigan Central R. Co., 111 U. S. 228, 241, 4 Sup. Ct. 369, 28 L. Ed. 410, and Williams v. Great Western Ry. Co., L. R. 9 Excheq. 157, 162, the failure to construct a fence was held to be the proximate cause of an injury, and in the latter case it was said:

"There are many° supposable circumstances under which the accident may have happened and which would connect the accident with the neglect. If the child was merely wandering about and he had met with a stile, he would probably have been turned back; and one at least of the objects for which a gate or stile is required, is to warn people of what is before them and to make them pause before reaching a dangerous place like a railroad."

The conclusion of the jury that the leg of this child would not have been caught between the floor of the car and the second floor of the building if there had been a competent operator in charge of the elevator is neither unsupported by the evidence nor irrational, and the refusal of the court to direct them to find otherwise was not error.

The court instructed the jury that it was for them, taking into consideration all the facts and circumstances of the case, to determine what a reasonable and prudent person would have done under the circumstances disclosed by the evidence, that if the defendant's conduct came up to that standard, she was free from negligence, and if it did not she was guilty of it, but that their decision of this question was not to be the product of their private or personal judgment, but of their judgment illuminated by the evidence in the case, that among other considerations which ought to have weight with them was the practice of reasonable and prudent men in the same business and that they should judge the defendant's conduct by the situation at the house where she maintained the elevator. This portion of the charge is specified as error on the ground that it left the jury to exercise their own judgment in determining what a reasonable man would have done under the circumstances of the defendant when they should have been instructed that the measure of what such a man would have done was that which the evidence disclosed that reasonably prudent men ordinarily had done in similar circumstances. No request for an instruction in these terms, however, was made by counsel for the defendant. Such a request would doubtless have been granted if it had been preferred. Nevertheless, the charge fairly called the attention of the jury to the evidence of what other prudent persons had done and directed them to consider it. In the absence of a request for a more specific instruction this part of the charge is not vulnerable to any just criticism. Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 416, 417, 12 Sup. Ct. 679, 36 L. Ed. 485; Charnock v. Texas & Pac. R. Co., 194 U. S. 432, 437, 24 Sup. Ct. 671, 48 L. Ed. 1057; Southern Pacific Co. v. Hetzer, 68 C. C. A. 26, 38, 135 Fed. 272, 284.

The charge of the court that the jury might consider the ease with which the elevator could be started, that a child could start it as well as an adult, and that the building was to be inhabited by children

as well as adults, in determining whether a reasonably prudent person would have employed an operator, is assigned as error. But it was not such and it is sustained by the turntable cases which have been reviewed in an earlier part of this opinion.

Finally, counsel specify as error the fact that the court permitted these questions to be answered:

"Q. Doctor, does it ordinarily happen in the experience of the medical profession, that there may be an injury to one part of the body accompanied by a severe nervous shock, and the nerves in another part of the body be injured? A. Most assuredly. Q. Doctor, I will ask you to state to the jury if it ordinarily happens in the experience of the medical profession that the shock to the nervous system where there is an accident is more severe where no physical injury exists, than where one does exist. A. It is often our experience. We often, where there is no bruise at all on the body, no signs of an injury, find that there is an injury from the shock."

But this ruling could not possibly have prejudiced the defendant because the witness who gave these answers had already testified without exception that the shock would ordinarily impair the nervous system; that there was a reflex injury to the nerve centers and that it was reasonably certain that this reflex action would tend to injure the substance of the nerve centers themselves, and in the case in hand there were crushed flesh and a broken bone, and if the answer to the second question be true it constitutes evidence that the plaintiff was less seriously affected by the accident than she would have been if she had received a nervous shock without bruise or break.

Error without prejudice is no ground for reversal. The judgment below must be affirmed.

And it is so ordered.