### McDONALD v. TOLEDO CONSOL. ST. RY. CO.

(Circuit Court of Appeals, Sixth Circuit. April 14, 1896.)

No. 339.

1. NEGLIGENCE—STARTING STREET CAR.

It is not, in itself, negligence to start an electric street car in the ordinary manner, and in the ordinary course of the operation of such car, while a team of horses, which manifest no symptoms of fright, is being driven past it.

2. SAME—OBSTRUCTING STREET.

A street-railway company which, in removing the snow from its tracks, piles it up in the part of the street outside such tracks, and suffers it to

remain there in masses which constitute an obstruction to travel, in violation both of its general duty and of a local ordinance requiring it, in removing snow, to distribute it evenly over the street, so as not to interfere with the free use of the same by the public, is responsible for the injuries suffered by a traveler on the street where horses take fright, though not in consequence of any fault of the railway company, and whose carriage is upset by coming in contact with such mass of snow before he is able to regain control of the horses.

Error to the Circuit Court of the United States for the Western Division of the Northern District of Ohio.

This is an action for personal injuries sustained by plaintiff's buggy being suddenly overturned while driving on one of the streets of Toledo, whereby he was thrown out with such force and violence as to inflict great injury upon his person. The defendant is a corporation owning and operating a line of electric street cars under franchises granted by the state of Ohio and the city of Toledo. The petition alleges that on the 13th of February, 1894, much snow fell, which formed a snow drift of about four feet deep at or near the intersection of Collingwood avenue and Cherry street, the latter being a street occupied by the tracks of the defendant company; that the company caused said snow to be removed from its tracks, and piled in an irregular and conical mass, to a depth of from four to six feet, on either side of its tracks and between said tracks and the curbstones of the streets; and wrongfully, carelessly, and negligently permitted said snow to remain piled in the manner aforesaid, so that the same became packed and frozen into a hard mass, rendering said street dangerous to persons who might have occasion to drive thereon. It is then averred that at noon on the 20th of February, 1894, plaintiff, "who was driving with a buggy drawn by two gentle horses, belonging to him," along Collingwood avenue, in a northerly direction, turned upon Cherry street at its intersection with Collingwood avenue, so as to drive into the city by way of Cherry street; that one of the electric cars of the defendant company was standing on its track on said Cherry street, near the intersection of Collingwood, and "that it became necessary for plaintiff to, and he attempted to, drive around said car to pass the same; that there was ample space for plaintiff to pass around said car without impediment, said mass of snow being piled some little distance in advance of said car." He then avers that in coming up to the car from behind he "was not able to see and know of said mass of snow, and did not discover the same until about the time said car was started, and plaintiff's horses became frightened as hereafter set forth." "When plaintiff, in so driving around said car, had reached a point about opposite said car, defendant's servants in charge of the car * * * wrongfully, negligently, and carelessly started said car, and the noise caused by the same and the appliances thereto frightened plaintiff's said team, so that they jumped forward and toward the side of said pavement, where the mass of snow was piled as aforesaid, and drew said buggy over upon said hardened mass of snow, * * * in such manner as to overturn said buggy, and throw plaintiff out with great force and violence," etc., etc. He alleges that the defendant's servants in charge of said car "knew, or by the exercise of reasonable care might have known, that the starting of said car while his horses were near the same was liable to frighten his horses, and cause them to drag plaintiff's buggy over said mass of snow and ice so placed and allowed to remain in said street, to the imminent peril of plaintiff's life and limb." The petition avers that he was exercising due care in driving along said street, "and, but for the existence of said mass of snow piled in said street as aforesaid, could have controlled and stopped his team, and his buggy would not have been overturned, or any injury sustained by him." It is then charged that the contract ordinance under which defendant occupied the streets with its tracks required it to perform and abide by all of the general ordinances of the city of Toledo, and that one of the ordinances of said city required the said company, "in case it became necessary to remove snow, sleet, or ice from its tracks, to distribute the same evenly over the surface of the street, so as in no manner to interfere with the free use and occupation of the same by the public, and that such re-

moval of snow and ice from the tracks shall be carefully and diligently done." The defendant filed a general demurrer to this petition, which was sustained, and the petition dismissed, as stating no cause of action. In addition to the facts heretofore stated, the petition avers that Cherry street, at the point obstructed by the mass of snow and ice described, was 44 feet wide from curb to curb, and that the two tracks of the defendant company were in the center of the street, and occupied a space of 14 feet. The accumulated snow was massed in piles on both sides of these tracks, and near the curbstone. It is clearly averred that between the snow mass and the standing car there was a clear space sufficient for a driveway around the car. From this judgment, plaintiff has appealed.

Hurd, Brumback & Thatcher, for appellant.

Smith & Baker, for appellee.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

LURTON, Circuit Judge (after stating the facts as above). The facts stated in the petition make a case where two acts of alleged negligence combined to bring about a catastrophe by which plaintiff sustained severe personal injuries. We will consider these acts separately. First, as to the manner in which plaintiff's horses were frightened. The averment is that the car was standing when plaintiff undertook to pass it, and that when he was alongside of the car the servants of defendant company wrongfully, carelessly, and negligently started the car, and that "the noise caused by the same and the appliances thereto" frightened his horses, etc. No circumstance is stated indicating any unusual stoppage, or that there was anything said or done to induce plaintiff to believe that the stop was anything more than an ordinary stop to let off or take on passengers, or that the car would stand until he could pass it. The rights of both parties to the use of the street for their respective purposes were equal. Plaintiff was no more obliged to wait and follow the car than it was obliged to wait and follow him. The court may take notice of the mode in which the business of such companies is conducted, and assume that plaintiff was aware of the usual and ordinary operation of an electric street-car line. No facts are stated in support of the epithets concerning the starting of the car. Why was the start then made "wrongful, careless, and negligent"? No facts are stated which will enable the court or jury to answer. The noise consequent upon the starting is averred to have frightened his horses. But, if the noise was the usual and necessary noise incident to the operation of such a car, then it was not, under ordinary circumstances, either wrongful or negligent. That the plaintiff was driving alongside the car when it was started does not in itself imply that it was negligence to start the car. Undoubtedly, if plaintiff's horses had shown indications of fright before the car was started, and this had been seen by the servants of defendant, it might very well be submitted to a jury whether to start the car under such circumstances would not be negligence. Traction Co. v. Lightcap, 17 U. S. App. 605, 10 C. C. A. 46, and 61 Fed. 762. But it is not averred that plaintiff's horses were frightened before the car started, or even that plaintiff's situation was known to the servants of defendant when they did start the car. Neither is it averred that any unusual or unnecessary noise was made in starting.

Plaintiff avers that his horses were gentle, and under his control. He voluntarily undertook to pass the car. His conduct in so doing indicated no apprehension from the possible starting of the car, and he states no circumstance which should have led defendant to apprehend danger to him if the car should resume its journey, although he was "near the same." We quite agree with the trial judge in his conclusion that the petition contains no sufficient averment of facts or circumstances from which either court or jury could infer negligence in the starting of the car. But the petition avers that plaintiff "was exercising due care in driving along said street, and was free from fault or negligence, * * * and, but for the existence of said mass of snow, piled in said street as aforesaid, would have controlled and stopped his team, and his buggy would not have been overturned, or any injury sustained by him." This brings us to the determination of the question as to whether the facts charged in respect of the snow pile which overthrew plaintiff's buggy amount to culpable negligence upon the part of the street-car company. The averments touching this matter necessary to be repeated are, substantially, that there was a great snowfall February 13, 1894, which drifted badly near the place of plaintiff's injury. "That defendant wrongfully, carelessly, and negligently caused said snow to be removed from its tracks, and piled in an irregular and conical mass to a depth of from four to six feet on either side of the same, and between said tracks and the curbstones of the street." It is further alleged that this method of relieving its own tracks was in violation of the city ordinance, which constituted a contract between the city and the street-railway company, and by which defendant was bound to remove snow from its tracks in such way as to distribute the removed snow evenly over the surface of the street, "so as in no manner to interfere with the free use and occupation of the same by the public." The facts averred quite distinguish the case from Chase v. City of Cleveland, 44 Ohio St. 505, 9 N. E. 225. That case merely held that it was not negligence for the city to permit a natural fall of snow or accumulation of ice to remain on the streets as it fell. The gist of plaintiff's case lies in the averment that the great mass of snow which obstructed the street and caused his vehicle to be overturned was created by the removal of snow from the defendant's own tracks, and by the failure to distribute it evenly, so that it would not lie in banks or masses, and obstruct the free and safe use of the street between the curbstone and tracks. The right of the railway to remove the snow and ice from its tracks so as to enable it to exercise its franchise is not disputed. But in doing so it has no right to so deposit the removed ice or snow as to constitute an obstruction which will interfere with the safe and free use of the street. There is no sort of justification in clearing its own tracks by unnecessarily massing the snow removed so as to constitute an obstruction such as that described in this petition. It had the right to enjoy the use of its own tracks, and to disincumber them from the natural accumulation which had occurred; but in doing so it must take care that it does not create an obstruction on the public street adjacent to its tracks. If this snow could have

been so distributed as not to interfere with the use of the street, then it was clearly a total disregard of the public rights in the street to deposit it so as to form banks or masses such as described. In removing it as charged, and suffering such hard and dangerous masses to lie in the street, although there may have been space sufficient for ordinary uses between such embankments and its tracks, it was guilty of a negligent obstruction of the public street, and is liable for all the consequences arising therefrom. There is no pretense that it had authority of law to create or maintain such needless and dangerous obstructions; on the contrary, its authority to use the street as a place to deposit removed snow required it to evenly distribute the same according to its plain, common-law duty. The ordinance imposed no greater, higher, or more onerous duty than existed at common law. Bowen v. Railway Co., 54 Mich. 496, 20 N. W. 559; Laughlin v. Railway Co., 62 Mich. 220, 28 N. W. 873; Dixon v. Railway Co., 100 N. Y. 170, 3 N. E. 65. That it was primarily the duty of the city to prevent or remove such needless and dangerous obstructions as such masses of hardened snow must be, does not affect the liability of the defendant as the author and creator of the evil, and it was the right of the plaintiff to have sued both the person who obstructed the street and the city, which suffered it to remain after reasonable notice of its existence. The right of the city to a judgment over against the railway company, as the responsible agency creating the nuisance, makes the present action the more direct and proper as reaching at once the party ultimately responsible. Dill. Mun. Corp. (3d Ed.) § 721; City of Brooklyn v. Brooklyn City Ry. Co., 47 N. Y. 476; McMahon v. Railway Co., 75 N. Y. 231. The duty of so removing snow from its tracks as to distribute it evenly was a duty imposed for the benefit of the public, by the ordinance of the city. A violation of that duty was a breach of duty not only to the city, but to the public, and therefore evidence of negligence for which it is liable, if it appear that the injuries complained of were the result of the violation of this duty. Railway Co. v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619.

The learned circuit judge was of opinion that, if it were conceded that the piling of snow in the street in the manner described was negligence, it was not the proximate cause of the accident. As we have before stated, the averments of the declaration make a case where two causes combined to produce the catastrophe, each measurably independent of the other. If the horses of the plaintiff had not become frightened, he would probably have sustained no injury. That they were frightened, and suddenly started or swerved, so as to carry his buggy onto this pile of hardened snow, was, as we have seen, not the culpable fault of the defendant. Neither was the plaintiff at fault, for he avers that his horses were gentle, and that in coming up from behind the car he could not see the mass of snow in advance of the car, and on one side of the street. But if he had seen the obstruction, and it also appeared that the space between the car and this bank of snow and ice was wide enough to enable him to pass the car without driving over the obstruction, it could not be said, as a matter of law, that he would be guilty of contributory

negligence in undertaking to pass the car. At most it would present a question proper for consideration by the jury. But, as the matter stands, he avers that the car prevented him from discovering the obstacle until he was opposite the car, when it suddenly started, with the result we have stated. What, then, was the connection between his injury and the negligence of the defendant in thus obstructing the street? He avers—and this on demurrer must be taken as true—that, but for the presence of this mass of snow, he would have been able to have controlled his horses, and prevented any injury. If this is true, then this mass of snow, which ought not to have been where it was, and was only there through the action and negligent interposition of the defendant, was a cause, which, if it had not existed, the plaintiff's buggy would not have been overturned, and he would have sustained no injury. If, therefore, the negligence of the company was not the causa causans, it was causa sine qua non. Whether it was a cause without which the accident would not have happened is a question of fact, unless the circumstances appearing demonstrate that the causal connection was not proximate. The cases of Hayes v. Railroad Co., 111 U. S. 228, 4 Sup. Ct. 369, and Railway Co. v. Kellogg, 94 U. S. 469, afford examples which are pertinent to the question here presented. In Hayes v. Railroad Co., supra, the plaintiff was a boy both deaf and dumb. He was injured by a railroad train alongside of which he was running. The negligence of the defendant consisted in its failure to erect and maintain a fence in good repair along the line of its road within the corporate limits of Chicago, as required by an ordinance of the city. It was urged that the want of a fence could not reasonably be alleged as the cause of the injury. To this the court said:

"It is further, argued that the direction of the court below was right, because the want of a fence could not reasonably be alleged as the cause of the injury. In the sense of an efficient cause,—causa causans,—this is no doubt strictly true; but that is not the sense in which the law uses the term in this connection. The question is, was it causa sine qua non,—a cause which, if it had not existed, the injury would not have taken place; an occasional cause? And that is a question of fact, unless the causal connection is evidently not proximate. Railroad Co. v. Kellogg, 94 U. S. 469. The rule laid down by Willes, J., in Daniel v. Railway Co., L. R. 3 C. P. 216, 222, and approved by the exchequer chamber, Id. 591. and by the house of lords, L. R. 5 H. L. 45, was this: 'It is necessary for the plaintiff to establish by evidence circumstances from which it may fairly be inferred that there is reasonable probability that the accident resulted from the want of some precaution which the defendant might and ought to have resorted to.'"

The case stated by the petition was sufficient to justify a submission to a jury of the question as to whether under all the circumstances the mass of hardened snow negligently piled upon the highway was not the legal cause of the accident which resulted in injury to the plaintiff.

The judgment must be reversed and the cause remanded, with directions to overrule the demurrer.