PITTSBURG, C. & ST. L. RY. CO. v. HOOD.

(Circuit Court of Appeals, Sixth Circuit. May 15, 1899.)

No. 685.

1. HIGHWAYS—USE BY RAILWAY COMPANIES—NUISANCES.
    In the absence of legislative authority, either direct or through the authorized action of a municipality, the construction and use by a railroad company of its road longitudinally on a public highway is a public nuisance.

2. SAME—UNAUTHORIZED USE—LIABILITY FOR INJURIES.
    The unauthorized occupation and use of highways by a railway company makes such company a trespasser, and liable for such damages as

proximately result to persons or property in the absence of contributory negligence.

3. USE OF STREETS BY RAILROADS.

Where authority, under power delegated by the legislature to a city, is given to construct a railroad upon city streets, reasonable conditions, essential for the protection of the public interest, may be imposed, which, if accepted by the company, are binding on the parties.

4. SAME—ORDINANCES.

An ordinance, under power delegated by the legislature, granting a railway company a right to construct a railroad upon a public landing under condition prohibiting use of the track during specified hours, combines contractual as well as police provisions, the latter being in the interest of public safety.

5. SAME—POLICE POWER.

That a police provision pursuant to clear legislative authority is found in an ordinance which contains contract provisions does not affect the essential character of the power exercised, as within the corporate limits the police provision has the force of a law enacted by the legislature.

6. RAILROADS—PERSONAL INJURIES—PROXIMATE CAUSE.

Plaintiffs' intestate, a teamster, stopped his team on the landing at a wharf at a point 30 to 60 feet from a train, and commenced to unhitch the horses preparatory to hauling another wagon into position. A movement of the train at this time was made, and the engine let off steam, and otherwise caused much noise. The horses became frightened, and the teamster, in the effort to control them, was dragged and trampled upon by the horses, inflicting injuries from which he died. The operation of trains at this point at the time of the accident was prohibited by ordinance. *Held*, that the act of the railroad company was the proximate cause of the injuries.

In Error to the Circuit Court of the United States for the Southern District of Ohio.

This was an action to recover damages for the death of plaintiff's intestate, based upon the ground that the injury which resulted in death was caused by the wrongful act and negligence of the defendant. The injury was sustained on a public landing in the city of Cincinnati, on the morning of September 19, 1895, at 6:50 a. m. This public landing is an open space on the river front, and is a large landing equal in dimensions to about two ordinary city blocks. It extends from the river across the line of Water street to the line of Front street, and from the east line of Broadway crossing Sycamore street to the west line of Main street. A railroad track crosses the north end of this public landing in the line of Front street. A spur track branches off from the south side of the main track in the line of Sycamore street, extending westerly, and parallel with the main line, into Water street. These are called the "connection tracks," by means of which passengers and freight are transferred across the city between the east and west systems of railroad terminals. The tracks were constructed under the authority and provisions of a city ordinance, by which the plaintiff in error acquired the right to operate only during the nighttime and until 6 o'clock in the morning. The material parts of the ordinance for the purposes of this case are as follows: "The hours which said track may be used for the transmission of freight and passengers shall be as follows: From the 1st of April to the 1st of October from 8 o'clock p. m. to 6 o'clock a. m., and from the 1st of October to the 1st of April from 7 o'clock p. m. to 6 o'clock a. m., and no cars shall be drawn on the track at any other hours. The companies to have the privilege of using the steam or horse power, as they may, in their judgment, think best; subject, however, to the approval of the city council. But in no case shall cars be drawn through the city at a greater speed than six miles per hour." The public landing, during the daytime, was used for all purposes to which a public landing is usually devoted, there being a wharf at the foot of Sycamore street, including its use by wagons, drays, and other suitable vehicles in the transportation of freight, which was discharged and received at the landing. At the

hour above mentioned a freight train operated by plaintiff in error entered the public landing, and was pushed into the Water street spur track, slowing up, and stopping its head end in Water street, with its rear end at or near Sycamore street. At this time the plaintiff's intestate was driving a two-horse wagon, loaded with tobacco, from the wharf diagonally across the public landing in the direction of Main street. He stopped at a distance variously estimated, but which may be put at from 30 to 60 feet from the train. His team was turned until it headed west, and the plaintiff's intestate then began to unhitch the horses, his purpose being to leave the wagon at that place, and drive the horses back to the wharf to aid in pulling the next wagon up the grade. Just at this moment a movement of the train was made, letting off steam, and otherwise causing much noise. The horses became frightened, and Hood went quickly to their heads in the effort to control them. The horses swung around suddenly, and plunged forward, dragging Hood as they went, and finally running over him, and inflicting the injuries from which he died. The main facts attending the accident as thus given are undisputed. The case, as stated in the petition, proceeded upon the grounds: First, that the cars were being operated unlawfully upon the public landing at the time, in violation of the ordinance; and, second, that the horses were frightened and the accident caused by the negligent manner in which the train was operated. In the court's instruction to the jury the case was thus stated: "The plaintiff claims that he is entitled to recover damages from defendant—First, because defendant's train, which frightened Hood's horses, and thereby caused the injuries of which he died, was unlawfully upon the public landing in violation of the ordinance; second, because the frightening of the horses, and the subsequent injuries to Hood, were caused by the negligence of the defendant in operating the train." Verdict was returned in plaintiff's favor for the sum of $4,500. A motion for a new trial having been overruled, judgment was duly entered upon the verdict, and to revise that judgment this writ of error is sued out.

Robert Ramsey, for plaintiff in error.
Alfred Mack, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and CLARK, District Judge.

CLARK, District Judge, after stating the case as above, delivered the opinion of the court.

In relation to the first ground on which the right to recover was rested, the court charged the jury as follows:

"It being conceded, gentlemen, that the train of the defendant was unlawfully upon the public landing, in violation of the ordinance forbidding it to be there at all at that time, and that it frightened the horses of Hood and thereby caused the injury of which Hood died, a prima facie case of negligence on the part of the defendant is presented, which will entitle the plaintiff to recover, unless it appears from the evidence that Hood was himself in fault, and that he was guilty of negligence which directly contributed to the injury."

This instruction is assigned for error, and is the only ground relied on in argument for reversal, and presents the only serious question which could arise on this record. The contention of plaintiff in error is: First, that, treating the ordinance in question as a valid police regulation, its violation is only evidence of negligence, which should have been submitted to the jury; and, second, that the ordinance was a mere contract, and not a police regulation, and that its violation was a breach of private contract, and not a violation of law. In determining the true construction and effect of this ordinance, it will be well to keep in view the law which would control the case

in the absence of such an ordinance. The public landing on which the accident occurred is a public highway in the fullest sense, and must be so regarded for all legal purposes, and the right to occupy such a public highway with a railroad is an extraordinary privilege. Legislative authority must exist to warrant the occupation of such a highway by express grant or by necessary implication. 1 Wood, R. R. (2d Ed.) 746; 2 Dill. Mun. Corp. (4th Ed.) § 707; Memphis City R. Co. v. Mayor, etc., of City of Memphis, 4 Cold. 406; People's Pass. Ry. v. Memphis City R. Co., 10 Wall. 38; Barney v. City of Keokuk, 94 U. S. 324; 3 Cook, Corp. § 713. The legislature may, of course, instead of granting by direct act or general legislation the power to railroad companies to occupy streets for the purpose of constructing and operating railways thereon, delegate to municipalities the right to consent to such use of the streets. In the absence of legislative authority, either direct or through the authorized action of a municipality, the construction and use by a railroad company of its road longitudinally on a highway or street is a public nuisance, and the company is subject to indictment for creating and maintaining such a nuisance. City of Knoxville v. Africa, 47 U. S. App. 74, 23 C. C. A. 252, and 77 Fed. 501; 2 Dill. Mun. Corp. (4th Ed.) § 708; 1 Wood, Nuis. (3d Ed.) pp. 96, 97; Com. v. Old Colony & F. R. R. Co., 14 Gray, 93; Railroad Co. v. Naylor, 2 Ohio St. 235; Hussner v. Railroad Co., 114 N. Y. 433, 21 N. E. 1002; 1 Wood, Nuis. (3d Ed.) §§ 300, 303. Such unauthorized occupation and use of streets and highways, being wrongful, not only creates a nuisance, but constitutes a railway company a trespasser, and renders it liable for such damages as proximately result to persons or property in the absence of contributory negligence. If authority is given to construct a railroad upon the streets of a city or town, provided the company first obtains the consent of the municipal corporation, or where, by the delegation of power from the legislature, the municipality itself grants the right, reasonable conditions may be annexed to the grant and imposed upon the company as to the construction and operation of its road, such as are deemed essential for the protection of the public interest and safety; and, if these are accepted by the railroad company, they are binding upon the parties. 1 Wood, R. R. 748; Pacific R. Co. v. City of Leavenworth, 18 Fed. Cas. 953 (No. 10,649); Richmond, F. & P. R. Co. v. City of Richmond, 96 U. S. 521; 1 Dill. Mun. Corp. (4th Ed.) § 706. It is this legislative authority, derived either immediately or through the authorized action of the municipality, which protects a railway company in the use of streets for railroad purposes from prosecution and suit for a public nuisance; and, when the consent of a city or town is required, the importance of an ordinance like the one in question is apparent. When the ordinance prescribes conditions on which the right is granted, these become binding, and the right to use the streets must be exercised strictly within the provisions of the ordinance. Railroad Co. v. Bingham, 87 Tenn. 522, 11 S. W. 705, is a leading and instructive case upon this subject. Judge Lurton (now one of the judges of this court), delivering the unanimous judgment of the supreme court of Tennessee, said:

"Mr. Wood, in his work upon Railroads, lays down what we regard as the sound and reasonable rule in the following words: 'It may be stated as a general rule that whatever is authorized by statute within the scope of legislative powers is lawful, and therefore cannot be a nuisance. But this must be understood as subject to the qualification that, where an act that would otherwise be a nuisance is authorized by statute, it only ceases to be a nuisance so long as it is within the scope of the powers conferred. If the power conferred is exceeded, or exercised in another or different manner from that prescribed by law, it is a nuisance as to such exercise, or difference in the mode of its exercise. Whenever an act is authorized to be done in a highway that would otherwise be a nuisance, the person or company to whom the power is given is not only bound to exercise it strictly within the provisions of the law, but also with the highest degree of care to prevent injury to person or property of those who may be affected by such acts.'"

In an extended note at page 759 of the work thus quoted from and approved the same author says:

"The rule is invariable that, where the statute imposes conditions upon the use of a highway for railway purposes, they must be complied with, or the railway will be a continuing nuisance. Town of Hamden v. New Haven & N. Co., 27 Conn. 158; Com. v. Erie & N. E. R. Co., 27 Pa. St. 339; Inhabitants of Springfield v. Connecticut R. R. Co., 4 Cush. 63; People v. Dutchess & C. R. Co., 58 N. Y. 152."

See, also, Harmon v. Railroad Co., 87 Tenn. 614, 11 S. W. 703, in which the doctrine of Railroad Co. v. Bingham is reaffirmed.

In Railroad Co. v. Naylor, 2 Ohio St. 235, the facts were that the charter of a railroad company merely fixed a few points through which the road was to pass from its commencement to its terminus, leaving the exact location of the road to the discretion of the corporation. After the road had been once located, the company undertook to relocate and to change and rebuild the road, and in doing so rendered the premises of the defendant in error less valuable than they had been before, for which suit was brought, and judgment recovered. On writ of error to the supreme court of Ohio, it was held that, the company having once located the road, their power in that respect ceased, that the relocation was unauthorized, and that the company was, consequently, liable for any damage done to property in the relocation of the road. The court, through Caldwell, J., said:

"The act of the railroad company in changing their location being unlawful, the next question arises,—whether they are liable to the defendant in error for the damage which he has sustained by such relocation. It is contended that, inasmuch as the road as relocated does not touch his property, the company cannot be made liable. It is a general principle of law that a person is liable for all the damage done by his illegal act, and this whether the injury was intended or not. It is well settled that an action lies as well for damage to adjoining property, by stopping or impeding the travel on, to, or from a street or highway, as any other damage that can be done to property, although the property injured may not be touched by the obstruction. See Fletcher v. Railroad Co., 25 Wend. 462; Bingham v. Doane, 9 Ohio, 165; 5 Eng. Law & Eq. 339; 29 E. C. L. 336."

The doctrine thus declared does not proceed upon the ground that the construction and operation of the railroad under such circumstances is negligent, but upon the ground that the prosecution of the business is unauthorized by law, and constitutes a nuisance. Accordingly, in Congreve v. Smith, 18 N. Y. 79, the court of appeals of New York, speaking by Strong, J., said:

"The general doctrine is that the public are entitled to the street or highway in the condition in which they placed it; and whoever, without special authority, materially obstructs it, or renders its use hazardous by doing anything upon, above, or below the surface, is guilty of a nuisance; and, as in all other cases of public nuisance, individuals sustaining special damage from it, without any want of due care to avoid injury, have a remedy by action against the author or person continuing the nuisance. No question of negligence can arise, the act being wrongful."

So, too, in Heeg v. Licht, 80 N. Y. 579, it was adjudged that the keeping of gunpowder or other explosives under circumstances where it would be liable, in case of explosion, to injure the property or persons of those residing in close proximity, would constitute a private nuisance, and render the person keeping such explosives liable in damage in case of injury therefrom; and it was said that this liability was entirely without regard to the question whether the person so keeping such explosives was chargeable with carelessness or negligence. This doctrine is laid down broadly as the established law in 2 Dill. Mun. Corp. (4th Ed.) § 1032, in the following language:

"No person, not even the adjoining owner, whether the fee of the street be in himself or in the public, has the right to do any act which renders the use of the street hazardous or less secure than it was left by the municipal authorities. Whoever does so, whether by excavations made in the sidewalk by the abutter, or by unsafe hatchways left therein, or by opening or leaving open an area way in the pavement, or by undermining the street or sidewalk, or by placing unauthorized obstructions thereon, which make the use of the street unsafe or less secure, is guilty of a nuisance, and is liable to any person who, using due care, sustains any special injury therefrom; and in such cases the person who created or continues the nuisance is thus liable irrespective of the question of negligence on his part."

See Hayes v. Railroad Co., 111 U. S., at pages 235, 236, 4 Sup. Ct. 369, where this general rule is recognized, and cases cited in which it was declared. See, also, Hetzel v. Railroad Co., 169 U. S. 26, 18 Sup. Ct. 255; Evans v. Fertilizing Co., 160 Pa. St. 209, 28 Atl. 702; Dennis v. Eckhardt, 3 Grant, Cas. 392.

The rule in this class of cases is thus stated by Judge Cooley:

"It is only necessary for the plaintiff in these cases to show how he has been injured by the nuisance, and to distinguish his injury from that suffered by the public at large, and he brings himself within the rules entitling him to redress." Cooley, Torts (2d Ed.) 736, 737.

See, too, Powell v. Fall, 5 Q. B. Div. 597, Rapier v. Tramway [1893] 2 Ch. 588, Railway Co. v. Truman, 11 App. Cas. 45, in which the common law, as well as the effect of certain statutory enactments, were stated.

It is conceded, and could not be controverted, that the legislature of Ohio conferred upon the city power to grant the right to construct and use the railroad upon the public landing, with power to annex conditions. The existence of the power to consent to such a use of the streets and highways in the city, and the power to impose valid and binding conditions, were fully recognized in the well-considered case of Louisville Trust Co. v. City of Cincinnati, 47 U. S. App. 36, 22 C. C. A. 534, and 76 Fed. 296; Id., 78 Fed. 307. It will admit of question whether, in the absence of constitutional or legislative restriction, municipal corporations, by virtue of the police authority

over streets, and the power to protect the safety of persons and property, might not impose, by ordinance duly enacted, conditions upon the operation of a railway through the streets of a city, similar to the provisions contained in the ordinance now in question. 1 Dill. Mun. Corp. (4th Ed.) §§ 393, 713; Richmond, F. & P. R. Co. v. City of Richmond, 96 U. S. 521; Chicago, B. & Q. R. Co. v. Nebraska, 170 U. S. 57, 18 Sup. Ct. 513; Gaslight Co. v. Murphy, 170 U. S. 78, 18 Sup. Ct. 505. It being established, and here conceded, that the city was vested with power to make the grant with conditions annexed, it is unnecessary for us to decide to what extent the power to impose conditions would exist in the absence of express legislative authority to do so. It is not to be doubted that the purpose of the legislature in conferring upon the municipality the power to consent to the use of the public landing with conditions was to enable the city to properly exercise its police power in the protection of persons and property against great danger in a public and much-used place, such as this landing. And in this view it is not open to reasonable question that the ordinance as enacted combines contractual as well as police provisions, the latter being in the interest of the public safety. In so far as the ordinance granted the right or franchise to construct and operate a railway upon this public ground, it became, when accepted, a contract; but the provision by which the use of the track was prohibited during the daytime was in its nature and effect a municipal or police regulation operating in the interest of public safety. McDonald v. Railway Co., 43 U. S. App. 79, 20 C. C. A. 322, and 74 Fed. 104; Hayes v. Railroad Co., 111 U. S. 228, 4 Sup. Ct. 369; Joy v. City of St. Louis, 138 U. S. 42, 11 Sup. Ct. 243. This police provision having been enacted pursuant to clear legislative authority, the fact that it is found in an ordinance which also contains contract provisions does not change the result or affect the essential character of the power exercised; and this police provision, being thus specifically authorized and duly enacted, unquestionably has, within the corporate limits, the force of a law enacted by the legislature of the state. Hayes v. Railroad Co., 111 U. S. 228, 4 Sup. Ct. 369; Robbins v. City of Chicago, 4 Wall. 657; City of Chicago v. Robbins, 2 Black, 418; Doran v. Flood, 47 Fed. 543; McDonald v. Railway Co., 43 U. S. App. 79, 20 C. C. A. 322, and 74 Fed. 104; 1 Dill. Mun. Corp. (4th Ed.) §§ 308, 393. It results from this view that the operation of the railroad by plaintiff in error during the daytime, contrary to the provisions of the ordinance was a violation of law, and constituted a nuisance.

It is finally insisted that there was error in the court's holding that the act of plaintiff in error was the proximate cause of the injury sustained. The proximate causal connection between the wrongful operation of the railroad by plaintiff in error and the injury is, however, in the light of authority, too clear to admit of question. McDonald v. Railway Co., 43 U. S. App. 79, 20 C. C. A. 322, and 74 Fed. 104; Railroad Co. v. Reesman, 9 C. C. A. 20, 60 Fed. 374, and 19 U. S. App. 596; Hayes v. Railroad Co., 111 U. S. 228, 4 Sup. Ct. 369; Whart. Neg. § 107. Hayes v. Railroad Co., 111 U. S. 228, 4 Sup. Ct. 369, strongly supports throughout the conclusions at which

we arrive in this case. And this is so notwithstanding the difference in the specific ground of liability declared in that case and in this. Substantially the same grounds urged for reversal here were pressed upon the attention of the court unsuccessfully in that case. In that case the liability of the defendant was put upon the ground of negligence in the omission of a duty imposed by ordinance, while the ground of liability in the case at bar is that of a public nuisance causing special injury. In that case the operation of the railway was permitted, and the mode of operation regulated, whereas in this case the use of the railway track at the time was expressly prohibited. The provision of law in that case went to the manner of operation, while in this it goes to and denies the right to operate at all. The distinction is between the prosecution of a lawful business in a negligent manner and the prosecution of a business prohibited by law. The breach of law in that case was an omission of duty imposed, and in this the commission of a wrong expressly prohibited. Whether, in the ordinary case, where the original act of the defendant is lawful, or authorized by statute, negligence is the gist of the action, or a necessary element, we are not required to decide, as the original act in the case at bar was clearly unlawful and wrongful.

The cases relied on by counsel for plaintiff in error are those in which the business was lawful, and the question was whether the business was operated in a negligent or unlawful manner. In view of the distinction which we have stated, such cases are not applicable. We conclude, therefore, in view of the whole case, that the court rightly instructed the jury that the undisputed facts established a right to recover, unless such right was defeated by the contributory negligence of the plaintiff's intestate. The fact that the instruction apparently proceeded upon the theory that the presence and operation of the train unlawfully upon the public landing constituted also a case of negligence does not affect the correctness of the proposition that the plaintiff was, upon the undisputed facts, entitled to recover, provided plaintiff's intestate was in the exercise of due care on his part. We think the law as thus stated and applied to this case is fully sustained upon authority, and is sound in principle, and we now so hold in a case which squarely presents the question. Judgment affirmed.